## Herfurth et al. v. Horine.
(Decided Nov. 4, 1936.)

20

L. D. GREENE and J. J. SAVAGE for appellants.

R. RUTHENBURG for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Dr. Emmet F. Horine has recovered judgment against Mrs. Ella Herfurth and the executors of Mrs. Nora Moore for $1,350 for services rendered as a medical expert in a suit contesting the will of the late James H. Whalen, in which Mrs. Herfurth and Mrs. Moore were plaintiffs. Mrs. Herfurth and the executors are appealing.

The evidence of Dr. Horine, which is in accord with the allegations of his petition, is to the effect that he was employed by Mrs. Herfurth and Mrs. Moore by and through their attorney and agent, Mr. Frank Benton of Newport, Ky. As we gather from the record, mental incapacity of the testator was the ground of attack on the will, and since Dr. Horine had examined and treated Mr. Whalen a number of times in the latter years of his life and was acquainted with his condition a short time

before the will was executed, Mr. Benton asked him for a history of the case, and his opinion concerning the testator's capacity to make a will. Dr. Horine testified that Mr. Benton seemed favorably impressed with the information and opinion given and indicated that he would be called as a witness, and requested that in the meantime he make a research of literature bearing on the medical phases and report with reference thereto; that he inferred this to mean that he was employed as a medical expert to assist the attorney in the case; and this was later confirmed in a letter from Mr. Benton asking for an opinion as to the effect upon the mind of diseases shown by the death certificate to have been the cause of Mr. Whalen's death. This letter was introduced in evidence and in part reads:

> "As stated to you, my clients, Mrs. Nora Moore and Mrs. Ella Herfurth of this city, who are the only heirs at law of Colonel James H. Whalen, and who are contesting his will, desire to employ you as an expert."

Dr. Horine accepted the employment, and as shown by his evidence, spent much time in research and study of authorities and in consultation with the attorneys for plaintiffs and testified as a medical expert on the trial. He was fully corroborated by a number of physicians and other witnesses concerning the nature and value of his services.

By answer Mrs. Moore and Mrs. Herfurth entered a general denial to the allegations of Dr. Horine's petition, but before the case came to trial Mrs. Moore died and by appropriate orders her executors were made parties defendant. Mrs. Herfurth was the only witness called in behalf of appellants. She testified in substance that she and her sister employed Mr. Benton to institute and prosecute the suit contesting the will, and that he had general charge of the case; that they paid Mr. Benton a cash fee and agreed to pay him a further contingent fee based on the amount that might be recovered; that under the agreement Benton was to furnish all witnesses and any additional attorneys he might desire; that she and her sister had nothing to do with the employment of Dr. Horine and other medical experts and knew nothing of their employment and did not learn, that Dr. Horine would testify until the case was called

for trial, although Mr. Benton had told her he had a number of doctors who were going to testify.

The court withdrew from the consideration of the jury all evidence of Mrs. Herfurth concerning the terms of the contract with Mr. Benton because (1) it had not been pleaded and (2) because any conditions or restrictions concerning the employing of an expert witness had not been communicated to Dr. Horine.

At the close of all the evidence the court overruled appellants' motion for a peremptory instruction in their favor, but sustained a motion of appellee for a directed verdict and instructed the jury to find for him such sum as they might believe from the evidence represented the fair and reasonable value of the services rendered by him to appellants in the will contest, and setting out in detail the elements to be considered by the jury in arriving at the fair and reasonable value of such services.

As grounds for reversal, it is argued in effect (1) that the court erred in excluding from the consideration of the jury the evidence of Mrs. Herfurth concerning the terms of the contract, and (2) in instructing the jury to find for appellee because the law of the case was for appellants.

Since it is admitted that Mrs. Herfurth and her sister employed Mr. Benton as their attorney to institute and have general charge of the suit contesting the will of Mr. Whalen and it is clearly established, in fact not disputed in evidence, that Mr. Benton employed appellee to perform the services for which recovery is sought, it only remains to be determined, if under such employment, Mr. Benton had implied authority to employ appellee for the purposes indicated and to bind appellants for the reasonable value of the services rendered, and if so, then whether appellee would be bound by any agreement between the attorney and his clients limiting his authority which had not been communicated to him.

The relation of attorney and client embodies all the essential elements of principal and agent, but the office of attorney is even more exacting than that of agent, since in addition to the duty of strict fidelity and fair dealing with his client, "he is also an officer of the court, and as such he owes the duty of good faith and honorable dealing to the courts before whom he practices his profession." 2 R. C. L. 939.

We find no cases from this jurisdiction involving the authority of an attorney under a general employment to bind his client for the cost of expert testimony; we do, however, find that it is a general principle running through all cases in this jurisdiction that the attorney is the agent of his client, and when under a general employment, he takes such steps as are usually taken in a similar action, the client in the absence of collusion, fraud, or other inequitable conduct between the attorney and an opposing party will be bound by the acts of the attorney. Douthitt et ux. v. Guardian Life Ins. Co. of America, 235 Ky. 328, 31 S. W. (2d) 377; Johnson v. Holt's Adm'r, 235 Ky. 518, 31 S. W. (2d) 895; Anglo-American Mill Co. v. Phillips, 236 Ky. 245, 32 S. W. (2d) 994, 996.

In the latter case it is said:

"An attorney employed to secure a particular end has an implied authority to take such steps as are necessary to its proper accomplishment, and he may incur such expenses as are necessary and proper to carry out the object of his employment."

And it was further held that the client was bound by the agreement of his attorney to pay a rental of $40 per month for a building for the storage of machinery involved in a replevin action. See, also, Kammerer v. Brown, 234 Ky. 199, 27 S. W. (2d) 959, and cases therein cited.

In the Johnson Case it was held that the client cannot escape the consequences of his attorney's act by showing that the latter's authority was limited by instruction not communicated to the opposing party or his counsel.

In Thornton on Attorneys at Law, page 351, it is said:

"The general rule is that an attorney has implied authority to do anything necessarily incidental to the discharge of the purposes for which he was retained, in or out of court."

In the same work, section 252, beginning page 461, it is said:

"There can be no doubt of the authority of an attorney, in the conduct and management of his

client's case, to make such necessary and proper disbursements as the case shall require. This authority can be implied from the relation of attorney and client, from which a request on the part of the client will be presumed. It is equally true that, however necessary the services might be required by the attorney in the client's interest the client has the right to refuse to incur the expenses of them, and the attorney cannot charge the client, except in the favor of some one who acted upon the presumed authority with which such attorney is clothed. * * *''

After enumerating numerous expenses for which a client may be bound by an attorney, it is further said in that section:

"It has also been held in some cases that an attorney may employ expert witnesses at his client's expense, and that one so employed may recover from the client, in the absence of evidence that he had a notice of a limitation on the attorney's authority in that respect, or agreed to look solely to the attorney for compensation."

In 6 C. J. page 657, it is said, in effect, that under an ordinary contract of employment an attorney has implied power to incur in behalf of his client reasonable expense in conducting his client's case, although not expressly authorized to charge his client with the amount thereof. Included in the list of reasonable expenses that may be so incurred are expert witnesses, and in support of the text cites Packard v. Stephani, 85 Hun, 197, 32 N. Y. S. 1016; Mulligan v. Cannon (Sup.) 41 N. Y. S. 279. See, also, Miller v. Palmer, 25 Ind. App. 357, 58 N. E. 213, 81 Am. St. Rep. 107; Forbes v. Chicago, R. I. & P. Ry. Co., 150 Iowa, 177, 129 N. W. 810, Ann. Cas. 1912D, 311.

In Klein v. Boylan, 115 N. J. Law, 295, 179 A. 638, it was held in substance that an attorney retained to prosecute a suit for damages arising out of personal injuries had implied authority to obligate his client to pay the fees of an expert in reading X-ray pictures and testifying on behalf of the client where the necessity for such witnesses and the reasonableness of the fee was not challenged.

Coming to cases in this jurisdiction dealing with the relation of principal and agent, we find it to be univer-

sally held that the principal is bound by the acts of the agent within the apparent scope of the authority conferred by him, and this even though the authority be actually limited, if the person dealing with the agent be ignorant of the limitation. National Deposit Bank of Owensboro v. Ohio Oil Co., 250 Ky. 288, 62 S. W. (2d) 1048; Hauck v. Lillick, 254 Ky. 6, 70 S. W. (2d) 958; Fidelity & Casualty Co. of New York v. Waugh, 222 Ky. 198, 300 S. W. 592.

Mr. Whalen left a very large estate, and his will was attacked on the ground that he did not have mental capacity sufficient to make testamentary disposition of his property. In such cases eminent physicians are usually called as expert witnesses, and it is extremely difficult for an attorney to properly develop and present the case without advice and assistance on the medical phases of the case. This is a matter of common knowledge, and Mrs. Herfurth and her sister must have known that such evidence would be necessary to a proper presentation of the case.

In the proven circumstances, Dr. Horine had a right to assume, as he did, that Mr. Benton, the general counsel in the case, had authority to employ him to render the services above indicated, and in the light of the authorities hereinbefore cited, we are constrained to hold that appellants may be held to account for the reasonable value of the services rendered; and in the absence of showing that appellee had any notice of any limitation upon the authority of Mr. Benton to so act for his client, the court did not err in excluding from the jury the evidence of Mrs. Herfurth concerning the terms of the contract or in instructing the jury to find for appellee the reasonable value of the services rendered. The jury's finding concerning the value of services is fully sustained by the evidence.

Judgment affirmed.