566 P.2d 566

**Odis ECHOLS, Jr., and Odis Echols, Sr., Plaintiffs-Appellees,**

v.

**N. C. RIBBLE COMPANY, a New Mexico corporation, Defendant-Appellant.**

**No. 948.**

Court of Appeals of New Mexico.

March 2, 1973.

Rehearing Denied March 27, 1973.

Certiorari Denied May 18, 1973.

W. Peter McAtee, McAtee, Marchiondo & Berry, John C. Maine, Jr., Martin & Maine, Albuquerque, for appellant.

John P. Eastham, William S. Dixon, Rodey Dickason Sloan Akin & Robb, P. A., Albuquerque, for appellee.

## OPINION

SUTIN, Judge.

Odis Echols, Jr., and Odis Echols, Sr., (Echols) sued N. C. Ribble Company, a corporation (Ribble) to recover damages for fraud in securing Echols' guarantee of refinancing notes issued by Ribble for equipment. Trial was held before a jury. A verdict was rendered for Echols, judgment entered, and Ribble appeals.

We affirm.

### I. Facts in Support of Verdict and Judgment

In the early spring of 1964, Western Contractors, Inc. (Western) was organized for the purpose of developing certain land in the Ruidoso area. In August, 1964, Western determined that its equipment and materials were insufficient to undertake a project of the size contemplated, and it purchased the entire stock of Sacramento Sand & Gravel Company (Sacramento). Sacramento owned a gravel pit and certain heavy equipment needed to carry on the development plans. Western assumed the liabilities of Sacramento as part of the stock purchase.

Ribble sold Sacramento the equipment it owned. The original notes on these sales had been transferred by Ribble to various financial institutions with recourse. Prior to August 9, 1965, Ribble was contingently liable in the amount of at least $146,455.56, a tremendous contingent liability.

Before and after the purchase of Sacramento by Western, Western was delinquent

in its payments to the financial institutions. In writing, the financial institutions expressed acute dissatisfaction with the continual delinquencies of Western and threatened foreclosure and other legal action if the accounts were not brought current. Ribble became extremely concerned by the delinquencies and communicated its concern to the parties primarily liable.

Western and Sacramento were financially insolvent throughout late 1964 and 1965. These difficulties required a change in the method of making equipment payments. On July 28, 1965, Ribble's "credit manager" Collins asked a Western representative to meet with Mr. Ribble and himself, to discuss refinancing at the earliest possible time, if a current refinancing attempt was not successful. A refinancing scheme was planned whereby the payments to the several finance companies would be lumped into two payments with two finance companies with financially solvent persons signing as guarantors, and with Ribble as a party contingently liable.

Echols had been interested in the development of the Ruidoso area. Prior to August 9, 1965, Echols loaned a Western representative $20,000.00 and was considering a public relations role if the project ever materialized.

On August 9, 1965, Collins and a Western representative arrived unannounced at Echols' place of business in Clovis, New Mexico, and asked Echols to sign as guarantors on the back of the new notes. Both men were reluctant to do so since neither knew anything about the equipment business. Collins showed both men an appraisal by Ira Ribble and stated that the equipment on the appraisal was security for the notes and the equipment was worth almost a third more than the amount of the notes. At one point, Echols walked out of the meeting, but they were induced to come back and discuss the matter further. Collins then reiterated his representation that the equipment was worth about $100,000 more than the amount of the notes. The Echols still refused to sign the notes since they knew nothing about the equipment and would not know how to dispose of or sell it if problems arose. At this point, Collins made the following representation:

I don't know why you are worried, because the N. C. Ribble Company, if you have any problems, if something goes sour, if you have any problems, the N. C. Ribble Company will pick up the equipment and sell it and bail us out.

Again Echols asked this question:

If something goes wrong on the present operation, then there will be no problem on the guarantors?

Collins responded:

We are the largest equipment dealer in the southwest. We will pick up that equipment and bail you out.

In reliance on these representations, Echols signed as guarantors on the notes.

At the time of the appraisal, on September 24, 1964, the condition of the equipment was very poor, some not useable in the gravel operation, and a pile of junk. The Ribble appraisal had been pumped up.

After the notes were signed by other endorsers, and the refinancing achieved, Western continued to be delinquent on their payments to the finance companies. In January, 1966, the Echols were concerned and requested Collins to pick up the equipment and sell it. Collins refused to acknowledge any such obligation and denied making a commitment to Echols.

Thereafter, several meetings were held at which the same request was made by Echols and refused by Ribble. Ribble advised Echols and another guarantor, that they should make the equipment operative so it could be more easily sold. Echols paid substantial monies into the corporation to make the equipment payments and to attempt to bring it into operable condition.

In May, 1967, Ribble agreed to pick up the equipment and sell it through his facilities, but reneged. The equipment was not picked up and sold. The Echols attempted

to sell the equipment themselves, but were unable to do so.

The Echols were required to make note payments directly to the finance companies, also to Sacramento so that Sacramento could make payments to the finance companies, and to Sacramento to enable it to operate so as to generate money to pay off the notes and to keep the equipment in operable condition. The loss which resulted was $144,209.70.

The jury returned a verdict against Ribble in the sum of $75,000.00. Motion for judgment notwithstanding the verdict by Ribble was denied.

## II. *There was Substantial Evidence Upon Which to Predicate Liability*

Ribble contends there was no substantial evidence upon which to predicate liability because the fraudulent representations made by Collins were not within actual or apparent authority.

Collins had been employed with Ribble for a total of thirteen and one-half years, and for eight and a-half years immediately preceding the trial of the case. He worked directly under N. C. Ribble, the president of the company. He signed letters as "credit manager." His position with Ribble was to assist the president of the company in whatever particular job the president wanted Collins to do, to assist in the financing of equipment, collection under certain circumstances, and broadly, whatever might come forward in a small organization. Collins had handled several hundred accounts, including repossessions, such as picking up equipment and selling it. He was required to act in several capacities, "to wear several hats," and he just could not have one particular job. The president called him "a finance man," "the banker." "He goes out and gets the papers fixed up. He is like any banker." Collins enjoyed broad authority.

With respect to securing the signatures of Echols on the new notes in Clovis, Collins advised one of the finance companies that the president had "spent a lot of money in attempting to help these people get financed *so as to bail out all of us and his latest move was to send me down to Alamogordo to assist in getting the job done."* [Emphasis added] The president personally sent Collins to Clovis to secure the necessary signatures on the new notes. He turned the refinancing matter over to Collins with a "duty and responsibility to take the papers to Clovis, get the papers properly drawn, and get the papers properly signed."

"An agent's scope of authority embraces not only his actual authority but also that apparently delegated." Southwestern Portland Cement v. Beavers, 82 N.M. 218, 478 P.2d 546 (1970). Collins was acting in the scope of his authority because he was authorized to procure the signatures of Echols as guarantors.

We do not find it necessary to determine whether Collins had actual or apparent authority to make false representations. This is a claim for damages. The only issue is whether Collins was acting within the scope of his authority. He was, Echols had a right to rely on the representations made by Collins in securing Echols' signatures. If the representations were false, Ribble is liable, even though it was without knowledge of its agent's fraud and otherwise innocent of wrongdoing. Grandi v. LeSage, 74 N.M. 799, 399 P.2d 285 (1965); Hammaker v. Lowe, 57 N.M. 585, 261 P.2d 129 (1953); Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940); Thrams v. Block, 43 N.M. 117, 86 P.2d 938 (1938).

Our courts have held that private instructions between Ribble and Collins can have no effect on Echols who dealt with Collins in ignorance of the instructions and in reliance on the apparent authority with which Ribble had clothed him. South Second Livestock Auction, Inc. v. Roberts, 69 N.M. 155, 364 P.2d 859 (1961); New Mexico-Colorado Coal and Mining Co. v. Baker, 21 N.M. 531, 157 P. 167 (1916); Grandi v. LeSage, supra.

We are convinced there was substantial evidence upon which to predicate liability on Ribble for damages because Collins was acting within the scope of his authority in procuring the signatures of Echols.

### III. *There was substantial Evidence to Prove the Elements of False Representations and Reliance.*

Ribble argues that there was no substantial evidence to prove the elements of false representations or reliance.

Ribble admits that Echols pleaded fraud with particularity as provided by § 21–1–1(9)(b), N.M.S.A.1953 (Repl.Vol. 4), but it contends that what was alleged was not proven.

Echols pleaded that Ribble made the following misrepresentations and fraudulent statements to Echols in order to persuade Echols to guarantee refinancing notes for the equipment:

(a) Ribble advised Echols that the appraisal furnished to Echols showed the value of the equipment, although Ribble knew that the values on the appraisal were grossly inflated.

(b) Ribble told Echols that the equipment had a value of more than the amount of the notes which Echols were asked to sign, although Ribble knew this was not true.

(c) Ribble told Echols that if Sacramento became unable to pay the notes, Ribble, which was said to be the largest heavy equipment dealer in the State of New Mexico, would pick up the equipment and sell it, and Echols would suffer no loss.

Actions for damages based on fraud are actions in tort, Montoya v. Moore, 77 N.M. 326, 422 P.2d 363 (1967), and the essential elements required to sustain an action for fraud are set forth in Prudential Insurance Company of America v. Anaya, 78 N.M. 101, 428 P.2d 640 (1967). The jury was instructed on these essential elements.

■ Durrett v. Petritsis, 82 N.M. 1, 474 P.2d 487 (1970), repeats the guidelines for viewing jury verdicts, including claims based on fraud. Viewing the evidence on the basis of the rules and standards stated, there is substantial evidence to support the verdict. The facts were sufficient upon which to submit the essential elements of fraud to the jury.

■ Ribble argues that Echols failed to meet the burden of proof on misrepresentation (c), supra, because of the language used. It reads in part "Echols would *suffer no loss*," [emphasis added] whereas Collins testified that Ribble "would pick that equipment up and sell it and *bail us out*," [emphasis added] and Ribble would "*bail you out.*" [emphasis added] These statements are not vague and indefinite representations. We see no material variance between what was pleaded and what was proved. In common parlance, the expressions used are synonymous in meaning. In any event, the parties understood the meaning of the expressions used. The issue of this misrepresentation was submitted to the jury, and it evidently understood the language.

### IV. *There was Substantial Evidence that the Proximate Cause of Echols' Damages was Attributable to Ribble's Misrepresentations.*

■ Ribble contends that the proximate cause of Echols' loss was the fact that Sacramento was unable to secure a loan for the golf course/subdivision project which they were promoting; that this precipitated the collapse of the project and led Sacramento to pursue a road project which proved a financial loss; that all of this occurred before Echols ever contacted Ribble's president.

Ribble misconstrues the proximate cause of the loss. The loss occurred when Ribble refused to pick up the equipment, sell it, and bail the Echols out.

There was substantial evidence to support the issue of proximate cause of Echols' loss.

## V. *There was no Error in Instructions Given and Refused.*

Ribble claims the trial court erred in giving U.J.I. 3.6, Burden of Proof by Preponderance of Evidence, because it was not applicable in a case based on fraud. U.J.I. 3.6 reads as follows:

It is a general rule applicable in all civil cases that a party seeking a recovery or a party asserting an affirmative defense, has the burden of proving the propositions necessary to support his claim or affirmative defense, as the case may be, by the greater weight of the evidence or, as it is sometimes called, the preponderance of the evidence.

. Evenly balanced evidence is not sufficient.

· Therefore, when I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find", or "if you decide", I mean you must be persuaded, considering all the evidence in the case, that the proposition on which one has the burden of proof is more probably true than not true.

Under Directions for Use, it is said:

This instruction should be given in every civil case.

This instruction embodies a new standard definition for "Burden of Proof." Other instructions heretofore given defining "Burden of Proof" and "Preponderance of Evidence" should not be given in the future as this instruction is sufficient to cover the situation.

By Order of the Supreme Court, No. 8000 Miscellaneous, U.J.I., *"together with directions as to use and non-use of instructions on certain subjects* . . . shall be in effect . . . and shall be used as provided in Rule 51 of Rules of Civil Procedure (Section 21–1–1(51), N.M.S.A.1953) *in cases filed on and after September 1, 1966."* [Emphasis added]

██ ▪ U.J.I. does not provide instructions on burden of proof in actions for fraud. But an action for fraud is a civil case within the meaning of "Directions for Use." Black's Law Dictionary, Rev. Fourth Ed., at 311, 312. Actions for damages based on fraud are actions in tort. Montoya v. Moore, 77 N.M. 326, 422 P.2d 363 (1967). This establishes that the action presently before us is a "civil case."

 In New Mexico, the doctrine of "clear, strong, and convincing evidence" does not apply to burden of proof. It applies in determining whether the evidence in support of the elements of fraud is substantial. McLean v. Paddock, 78 N.M. 234, 430 P.2d 392 (1967); Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299 (1955).

The trial court first gave U.J.I. No. 3.6 as its instruction No. 2, gave another instruction on the elements of fraud, and then gave instruction No. 10 which required that the elements of fraud be shown by evidence which was "clear, strong and convincing." Instruction No. 10 stated, in its entirety:

Fraud must be proved, though not necessarily by direct evidence, but when the plaintiff's case goes no further than to establish a state of facts from which the inference of fraud may or may not be reasonably drawn, he has failed to establish his case by clear, strong and convincing evidence, and it becomes your duty to find in favor of innocence and uprightness.

Ribble was adequately and carefully protected by requested instructions given where the question of fraud was involved.

U.J.I. 3.6 not only applied to the issue of fraud, but it also applied to other material allegations of plaintiff's complaint, such as scope of employment and mitigation of damages.

The trial court did not err in giving instruction U.J.I. 3.6.

 We have reviewed the claimed error in giving and refusing other instruc-

tions, but we find them without proper objection and without merit. Attorneys are afforded a reasonable opportunity to object to instructions. Section 21–1–1(51), subd. 1(i), N.M.S.A.1953 (Repl.Vol. 4). Objections must be explicit. Objections in general terms are not sufficient. The trial court must be advised of the specific error so he may have an opportunity to correct it. Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967); Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757 (1961).

The instructions as a whole were correct and proper.

## VI. *The Trial Court Properly Disallowed Ribble's Counterclaim Filed the Morning of Trial.*

The complaint was filed July 30, 1969. The first amended complaint was filed October 16, 1970. No court order enlarging the time within which to answer was ever granted. Twenty months later, on June 7, 1971, the morning of trial, Ribble filed an answer and counterclaim. Ribble did not seek leave of court to file the counterclaim. The trial court allowed the answer and affirmative defenses, but disallowed the counterclaim. We agree with Echols that Ribble's contention is patently frivolous. Anderson v. Jenkins Construction Co., 83 N.M. 47, 487 P.2d 1352 (Ct.App.1971).

Ribble did not comply with § 21–1–1(12)(a), N.M.S.A.1953 (Repl.Vol. 4), nor seek leave of court to set up the counterclaim by amendment due to oversight, inadvertence, or excusable neglect. Section 21–1–1(13)(f), N.M.S.A.1953 (Repl.Vol. 4).

The trial court properly disallowed the filing of the counterclaim.

Affirmed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.