607 P.2d 603

**Charles D. VICKERS and Mary L. Vickers, his wife, Plaintiffs-Appellants,**

**v.**

**NORTH AMERICAN LAND DEVELOP-MENTS, INC., a New Mexico Corporation, Defendant-Appellee.**

**No. 12481.**

Supreme Court of New Mexico.

Feb. 27, 1980.

Payne, Mitchell & Wilson, Bill G. Payne, Carrizozo, for plaintiffs-appellants.

Dickson & Dubois, John F. Caffrey, John R. Tiwald, Albuquerque, for defendant-appellee.

## OPINION

FEDERICI, Justice.

Appellants brought suit seeking specific performance of a land sales contract, or, in the alternative, to recover damages for the breach of that contract. The trial court ruled that the sales contract was subject to approval of appellee and that absent such approval, a valid and binding contract was never entered into. The trial court also held that Walsh, the sales manager of the Timberon development, had no actual or apparent authority to permit an exchange of residential property for commercial property. Judgment was entered for appellee. Appellants appeal. We reverse.

Mr. and Mrs. C. D. Vickers, appellants, after being shown land by employees of North American Land Developments, Inc., owner-developer of Timberon, appellee, entered into a "Contract for Deed and Escrow Agreement" with appellee. At the same time, appellants also signed a "Timberon Trade Agreement" which reads as follows:

### TIMBERON TRADE AGREEMENT

This is to acknowledge that NORTH AMERICAN DEVELOPMENTS, INC. has entered into an agreement with Mr. and Mrs. C. D. Vickers of Odessa, Texas to trade at no additional cost:

Lot 51       Block 49       Unit T-4

for a *2 acre parcel of their choise* [sic] *in T-14* as soon as this property is released for sale. If T-14 is not released within 90 (ninety) days deposit will be refunded. (Emphasis added.)

Appellants would not have entered into the "Contract for Deed and Escrow Agreement" had it not been for the trade agreement. Subsequently, appellee refused to effect a trade with appellants, contending that the sales manager at the Timberon development lacked authority to enter into such an agreement, particularly the trade of commercial property for residential property. Appellee also tendered back to appellants the payments they had made.

The issue on appeal is whether there is substantial evidence to support the trial court's finding that Frank Walsh, an employee of North American Land Development, Inc. (appellee), and sales manager of the Timberon project, lacked apparent authority to enter into the contract for sale and the trade agreement with appellants.

The trial court found that as a matter of business practice and under appellee's contract processing procedure, every contract of sale was subject to review by Mr. Mobley, President of appellee; that appellee notified appellants promptly of its position

and met with appellants about five weeks after the contract and trade agreements were executed; that appellee's sales manager, Mr. Walsh, had no actual or apparent authority to enter into a trade agreement; that on August 27, 1978, the date on which appellants visited the Timberon development, they were informed by Mr. Walsh that appellants would only be able to trade for "like" property, meaning residential, and not for condominium or commercial property; that appellee had not ratified the acts of its sales manager, and in fact had rejected them. The court concluded that:

> 7. The doctrine of implied or apparent authority has no application to transaction involving the sale of land and the actions of Frank Walsh whether with or without implied or apparent authority cannot bind the Defendant North American Land Developments, Inc.

■ We are cognizant of the fact that the record supports the court's conclusion that Walsh lacked *actual* authority to bind the appellee. However, the record unequivocably establishes that Walsh had *apparent* authority to bind appellee. The Doctrine of Apparent Authority has long been established in New Mexico. A principal is bound by the apparent authority of his agent, irrespective of whether he has actual authority, if the agent is placed in a position which would lead a reasonably prudent person to believe that the agent did indeed possess that apparent authority. *Douglass v. Mutual Ben. Health & Accident Ass'n*, 42 N.M. 190, 76 P.2d 453 (1937). This principle is largely derivative of the Restatement of the Law of Agency, § 49, comment b, as quoted in *Douglass, supra*, at 196, 76 P.2d at 456–57: *

> If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for

the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known.

In this case appellee knowingly placed Walsh in a position and gave him a title and power that would lead a reasonably prudent person to believe that he did have authority to enter into the Contract and Trade Agreement in question.

The Doctrine of Apparent Authority is based upon an estoppel theory:

> [T]he principal will not be permitted to establish that the agent's authority was less than what was apparent from the course of dealing for when one of two innocent parties must suffer, the loss must fall upon the party who created the enabling circumstances. (Citations omitted.)

*Southwestern Portland Cement v. Beavers*, 82 N.M. 218, 221, 478 P.2d 546, 549 (1970). Here, Walsh made no oral or written disclaimer of his authority prior to consummating the transaction with appellants. In fact, the record reflects that when appellants' counsel specifically inquired of Mr. Walsh concerning the negotiations, whether he had the authority to consummate the sales contract and trade agreement, he replied:

> A. I remember you asking me on January the 7th or 6th, with respect to him [Mr. Vickers] asking me the question, did I have the stroke, I think is how you put it, and I believe I answered you, as I will answer now with respect to that question, *I probably replied that I had the authority. I did have the authority to do what I was doing.* (Emphasis added.)

■ Inherent in an estoppel theory is the factor of detrimental reliance. *Southwest-*

* This principle remains largely unchanged as evidenced by the Restatement (Second) of Agency, § 49, comment c (1957): Acts are interpreted in the light of ordinary human experience. If a principal puts an agent into, or knowingly permits him to occupy, a position in which according to the ordinary habits of persons in the locality, trade or profession, it is usual for such an agent to have a particular kind of authority, anyone dealing with him is justified in inferring that he has such authority, in the absence of reason to know otherwise. The content of such apparent authority is a matter to be determined from the facts.

*ern Portland Cement v. Beavers, supra.* The detriment suffered here is in the nature of a loss of the benefit of the bargain, as both parties were in agreement that the property to be traded for in T-14 would be more valuable than the original parcel acquired in Unit T-4. More specifically, Mr. Walsh testified as follows:

Q. Do you recall making statements concerning if the land was worth more than what they were trading, that it was their good fortune; and if it was worth less, it was their bad fortune?

A. Well, we all knew it would be worth more.

Q. Do you remember making that statement, Mr. Walsh?

A. I could have made that statement.

Q. Do you remember it or not?

A. Yes, we knew it was going to be worth more money, T-14.

 North American Land Development Co., appellee, created the enabling circumstances by placing Walsh in a position which would lead a reasonably prudent person to believe that he possessed the power to consummate transactions of the type in question through execution of the agreements, by failing to post or give notice of any limitations on his authority prior to consummation of the transaction, and by cashing the $5,000 check which appellants gave as downpayment, creating an inference of ratification of Walsh's action. In view of these circumstances, we hold that appellee placed Walsh in a position of authority and should now be estopped from disavowing authority on the part of Walsh to bind it on a contract of sale and trade agreement.

 the language of the documents is clear. A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. *Major v. Bishop*, 462 F.2d 1277 (10th Cir. 1972). The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity. *Id.* We find that the provisions of the Contract of Sale and Trade Agreement are not ambiguous and therefore must be applied as they stand. *Alvarez v. Southwestern Life Insurance Co., Inc.*, 86 N.M. 300, 523 P.2d 544 (1974); *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972). Absent an ambiguity, we are not at liberty to divine an intention to the language used that is not present. *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 567 P.2d 62 (Ct.App.1977).

 Apparent authority existed in Mr. Walsh to bind his principle (appellee) in the real estate transactions. Implicit in appellee's argument is the contention that the oral contract between it and Mr. Walsh creating the agency cannot be relied upon by appellants because it would be in violation of the Statute of Frauds. However, in the past, this Court has held that an agency may be created orally even where the contract to be executed by the agent, pursuant to the authority given him, must be in writing to comply with the Statute of Frauds. *DeBaca, Inc. v. Montoya*, 91 N.M. 419, 575 P.2d 603 (1978); *Kennedy v. Justus*, 64 N.M. 131, 325 P.2d 716 (1958).

The judgment of the trial court is reversed and the cause remanded with instructions to grant to appellants specific performance on the "Contract for Deed and Escrow Agreement" and the "Timberon Trade Agreement" as written.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.