**12**

In re John Lawrence ZAMBRANO, a/k/a John L. Zambrano, a/k/a John Zambrano and Carolyn Rose Zambrano a/k/a Carolyn Zambrano, Debtors.

**FIRST NATIONAL BANK IN ALBUQUERQUE, a national banking association, Plaintiff,**

v.

**John Lawrence ZAMBRANO and Carolyn Rose Zambrano, Defendants.**

Bankruptcy No. 7–83–00095 MA. Adv. No. 83–0258 M.

United States Bankruptcy Court, D. New Mexico.

March 16, 1984.

Nancy J. Appleby, Albuquerque, N.M., for plaintiff.

Arnold W. Melbihess, Albuquerque, N.M., for defendants.

MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on plaintiff's motion for summary judgment, pursuant to Federal Rules of Civil Procedure 56, Bankruptcy Rule 756, and Local Rule 31, as amended. The plaintiff, First National Bank in Albuquerque (FNBIA), seeks summary judgment on its Complaint to Determine Dischargeability of Debt. The debt is on a promissory note to FNBIA signed by the defendant-debtor John L. Zambrano (Zambrano). FNBIA seeks a finding of non-dischargeability under 11 U.S.C. § 523(a)(2) (1978). Having carefully examined the record, the Court denies FNBIA's motion for summary judgment.

The relevant facts for the purpose of this motion are as follows. On about April 15, 1982, Zambrano went to FNBIA where he met with Richard Griego. Griego was a vice-president at FNBIA with the authority to approve loans for up to $25,000.00 without the approval of another bank officer. Zambrano completed a financial statement at Griego's request. Griego instructed Zambrano how to complete the forms and supplied Zambrano with the specific information. Zambrano signed a promissory note to FNBIA with a principle amount of $25,000.00 at an 18.25% annual interest rate. Zambrano maintains that he was merely co-signing the note for his father. While Zambrano had taken out two loans before, he was not sophisticated in banking matters and had never co-signed a note before. Griego arranged for the $25,000.00 loan. Of the proceeds, Zambrano gave $15,000.00 in cash to his father and used $10,000.00 for his own benefit.

The evidence in the record is, unfortunately, limited by uncontrollable factors. Zambrano's father, a central character to the underlying transaction, has since died. In addition, a federal criminal indictment alleging fraudulent activities in approving loans at FNBIA has been filed against

Griego. Accordingly, Griego is protected by his Fifth Amendment rights against self-incrimination, and has not testified.

In determining the propriety of FNBIA's motion for summary judgment, the Court must review the applicable state law, and review the record in the light most favorable to the non-moving party. *In re Morga,* 31 B.R. 356 (Bkrtcy.D. N.M. 1983). Further the Court must resolve all inferences and doubts in favor of the opposing party. *Id.* Having done so, the Court concludes that FNBIA is not entitled to summary judgment.

The Court's analysis for this motion must be limited in two respects. First, the uncontroverted facts show that Zambrano only benefitted from $10,000.00 of the funds disbursed by FNBIA. The remaining funds went to Zambrano's father. Therefore, the Court only considers whether the $10,000.00 is dischargeable. Second, the Court need only consider the dischargeability of the $10,000.00 under 11 U.S.C. § 523(a)(2)(B). Subsection (A) is clearly inapplicable because it expressly excludes statements concerning the debtor's financial condition such as the financial statement in this case. *See generally,* 3 Collier on Bankruptcy ¶ 523.08 (15th ed. 1983). Therefore, the Court limits its analysis to dischargeability under subsection (B). That subsection states, in relevant part:

(a) A discharge ... does not discharge an individual debtor from any debt ...

  (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by ...

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive; ...

11 U.S.C. § 523(a)(2)(B) (1978).

It is uncontroverted that the financial statement is materially false insofar as it applied to Zambrano's financial condition at the time he signed the promissory note. Yet on its face, the financial statement purports to reflect the debtor's financial condition. Therefore, there is no genuine issue of material fact as to the first two elements of subsection (B), and the elements are satisfied.

The third element of subsection (B) requires that the creditor rely on the debtor's written statement, and that reliance must be reasonable. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *see generally,* 3 Collier On Bankruptcy ¶ 523.-09[4] (15th Ed.1983). The nature of the additional reasonableness requirement is well summarized as follows:

Since the purpose of the exception is to protect creditors who are actually misled by fraudulent statements of debtors, the requirement that reliance be reasonable is sensible. A creditor who ignores available information, or who fails to seek information from sources that are commonly used, should not be heard to complain about the debtor's fraud. It is the creditor's failing to comport with normal business practices, not the debtor's fraud, that is the true cause of the loss.

*Yaretsky,* "The Fraud Exception to Discharge Under the New Bankruptcy Code," 53 Am.Bank.L.J. 253, 262 (1979). Given the reliance requirements of subsection (B), the Court finds that a genuine issue of material fact exists as to FNBIA's reliance on Zambrano's financial statement.

The uncontroverted evidence shows that FNBIA relied only on its vice-president, Richard Griego. For the purpose of arranging the loan, Griego was FNBIA. *Cf., Echols v. Ribble Co.,* 85 N.M. 240, 511 P.2d 566 (App.1973). Regardless of the information on Zambrano's financial statement, testimony indicates Griego would have arranged the loan. It was Griego who supplied the information to Zambrano. In its own brief, FNBIA recognizes that Griego,

**14**

not Zambrano, concealed the false information. The facts in the record provide no basis to impute FNBIA's reliance on its own employee to Zambrano. Without more, the Court cannot find that FNBIA reasonably relied on Zambrano's financial statement. *In re Houk*, 17 B.R. 192 (Bkrtcy.D.S.D.1982); *accord, In re Ardelean*, 28 B.R. 299 (Bkrtcy. ND Ill., 1983).

Furthermore, the Court finds that a genuine issue of material fact exists as to whether Zambrano made or published the financial statement with intent to deceive. From the facts in the record, the Court will not infer such an intent. To do so would allow FNBIA to use Griego's Fifth Amendment rights as a sword against Zambrano. Clearly, the Fifth Amendment should not be used for such a purpose. Nor do the facts establish the existence of a conspiracy between Zambrano and Griego. *See,* (N.M.Stat.Ann. § 30–28–2 (Cum.Supp.1983).

The facts of this case are unique, and require further comment by this Court. As stated above, the record is unfortunately limited. The two people who likely know the most about the loan transaction, Griego and Zambrano's father, either will not or cannot testify. Despite its findings, however, the Court in no way condones Zambrano's behavior in obtaining the loan proceeds. It must remain clear that the Court's decision today should in no way affect any criminal proceeding stemming from the acts in question. Finally, the Court notes that its holding does not preclude FNBIA from other avenues of recovery. It can also seek to recover from Griego.

This memorandum constitutes findings of fact and conclusion of law. Bankruptcy Rule 7052.

An appropriate order shall enter.