733 P.2d 1313

**HARPER OIL COMPANY,**
Plaintiff-Appellant,

v.

**YATES PETROLEUM CORPORATION,**
Yates Drilling Company, Abo Petroleum Corporation, and Myco Industries, Inc., Defendants-Appellees.

No. 15878.

Supreme Court of New Mexico.

Feb. 20, 1987.

Rehearing Denied March 23, 1987.

Hinkle, Cox, Eaton, Coffield & Hensley, Harold L. Hensley, Jr., Michael F. Millerick, Thomas D. Haines, Roswell, for plaintiff-appellant.

Dickerson, Fisk & Vandiver, Chad Dickerson, Rebecca Dickerson, Artesia, for defendants-appellees.

## OPINION

SCARBOROUGH, Chief Justice.

Harper Oil Company (Harper) brought suit against Yates Petroleum Corporation, Yates Drilling Company, ABO Petroleum Corporation, and MYCO Industries, Inc. (Yates), seeking declaratory judgment, accounting and punitive damages. After trial, judgment was entered in favor of Yates. Harper appeals. We affirm.

Harper, Yates, Phillips Petroleum Co. (Phillips), and other parties entered into a joint operating agreement for the purpose of drilling oil wells. Although the joint operating agreement was dated December 18, 1978, it was not executed at that time. Rather, it was executed by each party on the date of the acknowledgment to that party's signature on the agreement. Negotiations with each party concerning the details of the agreement continued until the last party (Phillips) executed it and returned it to Yates on January 31, 1979. Harper executed the agreement and returned it to Yates on January 25, 1979.

Yates commenced drilling the initial well on January 14, 1979, because it was confident that all parties would in fact execute the joint operating agreement. Phillips insisted upon an amendment to the joint operating agreement whereby Phillips retained the option to either participate in subsequent wells or assign its interest in subsequent wells to Yates, reserving a royalty interest. Harper insisted upon an amendment specifically limiting its interest in "the initial test well or subsequent wells" to 7.608696% of 87.5%.

Upon successful completion of the initial well, Yates earned certain acreage interests of Phillips and other contributing parties.[1] Yates bore the entire burden of the cost necessary to earn the Phillips interest. Harper did not bear any portion of such cost. Phillips elected not to participate in subsequent wells and assigned a further interest to Yates pursuant to the terms of the Phillips amendment.

Harper contends that the joint operating agreement gave Harper the right to share pro-rata in the interest that was assigned to Yates by Phillips pursuant to the Phillips amendment. The trial court concluded that the joint operating agreement was ambiguous on this point.

The issues presented by this appeal are: (1) Whether the trial court's findings of fact numbers eighteen through twenty, twenty-two, and thirty-three are supported by substantial evidence; and (2) Whether the trial court's conclusions of law are supported by the findings of fact.

The function of an appellate court is to review evidence considered by a trial court, not to weigh it; if there is "substantial evidence" (i.e., evidence which a reasonable mind accepts as adequate to support a conclusion) to support the trial court's findings, the findings shall not be disturbed. *Sandoval v. Dep't of Employment Sec.*, 96 N.M. 717, 718, 634 P.2d 1269, 1270 (1981).

If the findings of fact are supported by substantial evidence, and if the findings of fact support the conclusions of law upon which the judgment rests, then the judgment will be sustained on appeal. *See Watson Land Co. v. Lucero,* 85 N.M. 776, 517 P.2d 1302 (1974).

There was substantial evidence to support challenged finding number eighteen. Finding number eighteen states: "Yates did not intentionally withhold any information regarding the terms of the Phillips Farmout Agreement from Harper." The trial court heard evidence that there was no conscious decision on the part of Yates' management to withhold information from Harper. The trial court also heard evidence that Yates was understaffed at the time Harper requested information concerning the Phillips amendment. Based upon this evidence, the trial court could have reasonably found that Yates did not intentionally withhold information from Harper.

There was substantial evidence to support challenged finding number nineteen. Finding number nineteen states: "Harper's decision to enter into the Operating Agreement was not influenced nor induced by Harper's failure to know every term of the Phillips Farmout Agreement." Yates offered Harper the opportunity to participate in acquiring Phillips farmout acreage. Harper understood that its participation in subsequent wells was tied to its participation in the farmout on the initial well. Moreover, Harper insisted that the joint operating agreement be amended to limit Harper's interest in the initial test well or subsequent wells to 7.608696% of 87.5%. Based upon this evidence, the trial court could have reasonably found that Harper's decision to enter into the joint operating agreement was not influenced nor induced by Harper's failure to know every term of the Phillips amendment.

---

1. When one party to a joint operating agreement of this kind agrees to bear more than its share of costs on a particular well in exchange for acreage interests of other parties, the exchange is referred to as a "farmout." Webster's

Third New International Dictionary 824 (1976) defines "farmout" as "a sublease granted by an oil company to another for drilling on partially proven ground."

There was substantial evidence to support challenged finding number twenty. Finding number twenty states: "Harper's failure to know of the full terms of the Phillips Farmout Agreement was not caused by any intentional, fraudulent, reckless or negligent conduct on the part of Yates." The same evidence which supports finding number eighteen supports finding number twenty.

Challenged finding number twenty-two states: "The acreage farmed out by Phillips at the time of the drilling of subsequent wells was not an 'acreage contribution' to the drilling of such subsequent wells, but was a part of Phillips' contribution to the drilling of the initial test well." This finding should be read in conjunction with article VIII(C) of the joint operating agreement, a provision which Harper alleges was breached by Yates. Article VIII(C) contains the following pertinent language:

> While this agreement is in force, if any party contracts for a contribution [in the form of acreage toward the drilling of a well], the party to whom the contribution is made shall promptly tender an assignment of the acreage, without warranty of title, to the Drilling Parties in the proportions said Drilling Parties shared the cost of drilling the well. If all parties hereto are Drilling Parties and accept such tender, such acreage shall become a part of the Contract Area and be governed by the provisions of this agreement.

There was substantial evidence to support finding numer twenty-two. The trial court heard evidence that the contribution clause would only apply when an individual not a party to the joint operating agreement, but who owned land adjacent to the contract area, offered to make an acreage contribution. Moreover, the trial court relied on *Superior Oil Co. v. Cox*, 307 So.2d 350 (La.1975), where the Louisiana Supreme Court interpreted a similar clause to apply only to contributions "by outsiders— those not party to the joint operating agreement." *Id.* at 356.

Challenged finding number thirty-three states: "Phillips was not a 'nonconsenting' party under Article VI.B(2) of the Operating Agreement in the drilling of any of the subsequent wells." Article VI(B)(2) is entitled "[Subsequent] Operations by Less than All Parties" and states in part:

> If any party receiving such notice as provided in Article VI.B.1 or VI.E.1 elects not to participate in the proposed [subsequent] operation, then ... the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, within sixty (60) days after the expiration of the notice period of thirty (30) days * * * actually commence work on the proposed operation and complete it with due diligence. Operator shall perform all work for the account of the Consenting Parties * * *
>
> If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable notice period, shall advise the Consenting Parties of (a) the total interest of the parties approving such operation, and (b) its recommendation as to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within forty-eight (48) hours ... after receipt of such notice, shall advise the proposing party of its desire to (a) limit participation to such party's interest as shown on Exhibit "A", or (b) carry its proportionate part of Non-Consenting Parties' interest.

By finding that Phillips was not a "Non-Consenting Party" under article VI(B)(2), the trial court in essence found that Harper was not entitled to participate in acreage farmed out to Yates pursuant to the Phillips amendment.

Substantial evidence supported finding number thirty-three. The Phillips amendment is substantial evidence that Phillips bargained to exclude itself from the operation of article VI(B)(2). The Phillips amendment provides in pertinent part:

> 3. In the event Yates shall elect to drill any additional well after completion of the initial well, a substitute well or the option well as set out in Articles VI,

XV–A, or XV–B of the Operating Agreement, it shall immediately notify Phillips in writing of such election and shall furnish Phillips [certain enumerated information].

Phillips shall have fifteen (15) days after the receipt of the notice of Yates' election to drill such well or wells, and the information set out above, to elect whether to join Yates in the drilling of such well or wells with a twenty-five percent (25%) interest or to relinquish its right to join in such well or wells.

Failure of Phillips to respond to Yates' notice of election to drill within fifteen (15) day period set out above shall be deemed an election not to join in the drilling of such well. In the event Phillips shall not elect to join Yates in the drilling of any such well, Phillips shall assign to Yates its interest in the proration unit, and shall reserve to itself an overriding royalty of 3.75% of all production allocated to such proration unit.

Since Phillips bargained to exclude itself from the operation of article VI(B)(2), it was not a "Non-Consenting Party" within the contemplation of that provision.

Harper also attacks the trial court's conclusions of law. They state respectively:

1. The Operating Agreement as executed by the parties is ambiguous.

2. Reading the Operating Agreement as a whole, including the conditions by Harper and Phillips, and considering the extrinsic evidence of the parties' intention, Yates did not breach the Operating Agreement.

3. Harper has not been damaged by Yates' conduct and is not entitled to damages.

We agree that the joint operating agreement is ambiguous. Whether ambiguity exists in an agreement is a matter of law. *Young v. Thomas*, 93 N.M. 677, 679, 604 P.2d 370, 372 (1979). When the language of a contract can be fairly and reasonably construed in different ways, the contract is ambiguous. *Vickers v. N. Am. Land Devs., Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). Articles VI and VIII, read in conjunction with the Harper and Phillips amendments, are ambiguous. Findings of fact numbers thirteen (referring to the Harper amendment), fifteen (referring to the manner in which the joint operating agreement was executed), sixteen (referring to the Phillips amendment), twenty-two, and thirty-three support conclusion of law number one.

We also agree that Yates did not breach the joint operating agreement. In view of the fact that Articles VI and VIII are ambiguous, the trial court reasonably concluded on the basis of all the evidence that Harper was not entitled to participate in any Phillips farmout. Findings of fact eleven (referring to a statement that Harper did not wish to participate in the farmouts), thirteen, fifteen, thirty-three, and thirty-four (referring to the fact that Harper's interest in all wells is consistent with the terms of the Harper amendment) support conclusion of law number two. Conclusion of law number three follows from conclusion of law number two.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.