793 P.2d 261

**Frederick G. COMSTOCK Plaintiff-Appellant,**

v.

**Josephine MITCHELL Defendant-Appellee.**

No. 18844.

Supreme Court of New Mexico.

June 4, 1990.

John B. Speer, Albuquerque, for plaintiff-appellant.

Singer, Smith & Williams, Gordon Reiselt, Albuquerque, for defendant-appellee.

## OPINION

SOSA, Chief Justice.

■ Mitchell hired Yudin to represent her in her divorce action. In the course of the proceedings Mitchell and Yudin agreed to hire Comstock, an accountant, to testify as an expert on Mitchell's behalf. Through Yudin Mitchell paid Comstock $2,500 for so testifying. Comstock billed Mitchell for an additional nearly $2,500. Mitchell refused to pay the additional fee that Comstock claimed, and Comstock sued in metropolitan court. He lost, appealed to district court, and lost again. On appeal, he claims error in the metropolitan court's findings and judgment, which were both incorporated into the same document. The metropolitan court found, in pertinent part:

[T]he services performed by [Comstock] were reasonable and necessary[;]

[Comstock] failed to prove that agent, Ed Yudin, acted within the scope of his actual, expressed, implied apparent or ostensible authority[;]

By testimony of [Mitchell], it was established that Agent Ed Yudin acted outside the scope of his authority and this testimony was not rebutted by [Comstock] or any of his witnesses[;] [Comstock] failed to make any inquiry into the extent of agent Yudin's authority, even though he knew or should have known that his initial fees were paid by someone other than [Mitchell][;]

Mitchell relies on *Albertson v. Jones*, 42 N.C.App. 716, 257 S.E.2d 656 (1979), for the proposition that Comstock had the burden of proving Yudin's authority to contract with Comstock for an amount greater than $2,500 in witness fees. That case, however, is not helpful to Mitchell, as there the plaintiff "neither alleged nor offered any evidence that Bonnie Jones, the defendant's husband, was acting as the defendant's agent in procuring the tobacco floater insurance policy." *Id.* at 719, 257 S.E.2d at 657. Here there is no dispute that Yudin was Mitchell's agent and that he legitimately incurred the first $2,500 of expenses on Mitchell's behalf.

The issue before us concerns whether an agent (attorney Yudin), who indisputably had authority to obligate the principal to pay witness fees of $2,500 on behalf of his principal (the client Mitchell), likewise had authority to pay a third party (Comstock) fees in excess of that sum and whether it was the third party's responsibility reasonably to have known that Yudin's authority to pay his (Comstock's) fees did not exceed $2,500. We agree with Comstock that the metropolitan court's findings are based on errors of law and thus reverse the judgment of the district court based on those findings and instruct the district court to reverse the metropolitan court and to make findings of fact as discussed below.

There is no doubt here that Yudin had express authority to pay Comstock a certain fee. The issue before us involves *limitation* on Yudin's authority.

It is always competent for a principal to limit the authority of his agent, and *if* such limitations have been brought to the attention of the party with whom the agent is dealing, the power to bind the principal is defined thereby * * *. Clearly, a limitation by the principal of the agent's authority, *communicated to a third party*, is effective to excuse the principal from liability to that third party for acts by the agent in excess of the limit prescribed; and a person dealing with an agent must use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of his powers.

3 Am.Jur.2d *Agency* § 82 (1986) (emphasis added); *see also Chevron Oil Co. v. Sut-*

*ton*, 85 N.M. 679, 515 P.2d 1283 (1973); *Echols v. N.C. Ribble Co.*, 85 N.M. 240, 511 P.2d 566 (Ct.App.), *cert. denied*, 85 N.M. 229, 511 P.2d 555 (1973).

The issue is thus narrowed as follows: Did Comstock know or should he have known that Mitchell and Yudin had agreed not to pay Comstock more than $2,500, or did he act undiligently and imprudently in ascertaining what limits, if any, Mitchell had imposed on Yudin? The most that the record shows is as follows.

On direct examination Mitchell was asked, "Did you have any discussions with Mr. Yudin regarding any further payments [over and above $2,500] to Mr. Comstock?" She answered, "No. He said that about $2,500 should do it." When asked, "Did you ever authorize Yudin to pay Mr. Comstock any more for services rendered?", she answered, "No, sir." This testimony merely establishes, at best, that between Mitchell and Yudin the latter's authority to pay Comstock was limited to $2,500. The next question is what did Comstock know about this arrangement, or what *should* he have known? He testified that Yudin "told me that he [Yudin] had received some authorization for some advance money, I believe from the court or a judge or someone, and that then *as I billed it he would reimburse me from money obtained from [Mitchell]* * * *. I assumed it came from [Mitchell]. I'm sorry, I don't know; I have no idea what the arrangements were." (Emphasis added.)

We disagree with Mitchell's argument on appeal that "she has proven through her testimony that her agent exceeded his authority." Mitchell may have shown that *insofar as she and her agent were concerned* Yudin exceeded his authority, but she has not demonstrated that she made known to Comstock that Yudin's authority was limited to $2,500. Nor has she shown that Comstock acted imprudently or without diligence in relying on Yudin's representation that Yudin would pay Comstock "as billed." Comstock's testimony merely shows that he did not investigate further into the arrangement between Mitchell and Yudin once Comstock had established that Yudin had authority to pay Comstock his bills as presented.

It is well settled that it is within the implied authority of an attorney to bind his client for the fees of an expert witness. *Klein v. Boylan*, 115 N.J.L. 295, 179 A. 638 (1935); *Herfurth v. Horine*, 266 Ky. 19, 98 S.W.2d 21 (1936); *Portnow v. Berg*, 593 S.W.2d 843 (Tex.Ct.App.1980); *see also Regis Radio Corp. v. American Employers Ins. Co.*, 30 Misc.2d 341, 214 N.Y.S.2d 976 (1961); 7A C.J.S. *Attorney & Client* § 212 (1980). But if Comstock knew or through the exercise of due diligence should have known that Yudin's authority was limited to payment of only $2,500, Comstock is not entitled to any fee in excess of that amount.

Here the metropolitan court erred by finding in effect that Comstock had to prove that Yudin did not exceed the scope of his authority, i.e., that Yudin did not contract improperly with Comstock for a fee in excess of $2,500. Such a finding wrongly placed the burden on Comstock. Comstock was not obligated to prove a negative—that Yudin did not exceed the limitation on his authority. Rather, Mitchell was obligated to prove that Yudin exceeded this limitation and that Comstock knew or through the exercise of due diligence should have known that Yudin exceeded this limitation.

Thus we remand this case with instructions to the district court to answer the following questions: Did Comstock know or through the exercise of due diligence should he have known that Yudin exceeded his authority in contracting with Comstock for witness fees in excess of $2,500? If the answer is yes, then the metropolitan court's judgment in Mitchell's favor is affirmed. If the answer is no, then the court will answer the following questions: Were Comstock's fees above $2,500 reasonable? If the answer is no, then the court will enter judgment in favor of Mitchell or enter judgment in an amount found to be reasonable. If the answer is yes, then the court will enter judgment in favor of Comstock for the excess fees he has charged.

For the foregoing reasons this case is reversed and remanded to the district court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

MONTGOMERY, J., concurs.

RANSOM, J., specially concurring.

RANSOM, Justice (specially concurring).

I concur in the result reached by the majority, but I write specially to state a belief that it would serve well the law of agency if we were to more distinctly assign meaning to the various words of art defining actual and apparent authority, and more precisely construct the foundation necessary for the establishment of either.

Actual authority is given to the agent by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent or from the circumstances of the relationship. *Restatement (Second) of Agency* § 7 comment c (1958). Absent a limitation to the contrary, I agree with the majority that it lies within the implied authority of an attorney to bind the client to pay the reasonable expenses incurred in the preparation and trial of a case, including the fees of an expert witness. Here, however, the trier of fact specifically found that the attorney acted outside the scope of his authority. As the majority recognizes, testimony that the principal neither discussed nor authorized payment of expert fees over and above $2,500 supports a finding that actual authority was limited to $2,500. Therefore, I would affirm the lower court on the issue of actual authority. There was neither express nor implied authority in this case.

It is not clear, however, that the trial court made specific findings of ultimate fact regarding apparent authority. *See* SCRA 1986, 1–052(B)(1)(a), (b) (the court shall find ultimate facts necessary to determine the issues). The trial court did find that the expert witness failed to prove the attorney acted within the scope of "apparent or ostensible authority," but this finding seemingly is based on the expert's failure to make any inquiry into the extent of the attorney's authority to bind his client. The unanswered determinative question of fact, however, is whether the failure was unreasonable, i.e., whether the principal proved the third party had constructive knowledge of the limitation. I would reverse with instructions to the court to make certain findings material to the issue of apparent authority, e.g., whether the client had placed her attorney in a position that would lead a reasonably prudent third party to believe the attorney had authority to bind the principal to pay witness fees incurred, and whether the expert reasonably relied on such belief notwithstanding his failure to ascertain any limitation on the authority (an authority normally implied as between attorney and client to include litigation expenses, as discussed above). *See Restatement (Second) of Agency* § 27 ("Creation of Apparent Authority: General Rule") (1952); *see also Id.* § 49; *Romero v. Mervyn's,* 109 N.M. 249, 784 P.2d 992 (1989); *Vicker's v. North Am. Land Dev.,* 94 N.M. 65, 607 P.2d 603 (1980); *Douglas v. Mutual Ben. Health & Accident Ass'n,* 42 N.M. 190, 76 P.2d 453 (1938).

I wish to emphasize that apparent authority must emanate from the conduct of the person to be charged as principal. *Restatement (Second) of Agency* § 8 comment e, § 27 comment a (1958); *see also Romero,* 109 N.M. at 253, 784 P.2d at 996 ("While actual authority is determined in light of the principal's 'manifestations of consent' to the agent, apparent authority arises from the principal's manifestations to third parties * * *."). For this reason, the unauthorized statements of an agent to the third party concerning the existence or extent of his authority cannot be relied upon to establish apparent authority. *See Restatement (Second) of Agency* § 27 comment a ("The information received by the third person may come directly from the principal by letter or word of mouth, from *authorized* statements of the agent, from documents or other indicia of authority given by the principal to the agent * * *.") (emphasis added), comment c ("A state-

ment by an agent to a third person with whom he deals, as to the extent of his authority, is admissible in evidence as an operative fact creating apparent authority upon proof that the agent was *authorized* to make the statement.") (emphasis added); *see also* 1 F. Mechem, *The Law of Agency* § 285 p. 205 (1914) ("Agent's authority cannot be established by his own statements and admissions.").

The agent's authority, either actual or apparent, must be traced back to some act or statement by the principal. Consequently, I consider irrelevant the representations of the attorney to which the majority has referred. Such representations could have relevance only if authorized by the principal or if they put the third party on notice of a limitation on authority. Likewise, I question the propriety of the statement in the majority opinion: "Nor has [the client] shown that the [expert witness] acted imprudently or without diligence in *relying on [the attorney's] representation* that [the attorney] would pay [the expert witness] 'as billed'." (Emphasis added.)