STANLEY KASPER, Appellant, *v.* BUFFALO BILLS OF WESTERN NEW YORK et al., Respondents.

Fourth Department, June 29, 1973.

88

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Grover R. James, Jr.,* of counsel), for appellant.

*Adams, Brown, Starrett & Maloney* (*Daniel T. Roach* of counsel), for respondents.

CARDAMONE, J.  On Sunday afternoon, September 8, 1968, immediately after the two-minute warning had been given signaling the end of the Buffalo Bills' season opening game against the Boston Patriots, the plaintiff, Stanley Kasper, while walking out of Buffalo's War Memorial Stadium fell, sustaining serious injuries to his back.  He and members of his family had been seated in the bleacher, section 1, row 30, seats 22 through 25. He claimed that, as he and his party were exiting the stadium, the concrete aisle along row 30 where they had been seated was blocked by other spectators and that in order to continue his progress he had to step down onto the wooden bleacher of row 29.  While walking along the wooden benches of row 29, the outer board (2 inches by 4 inches) split and broke throwing him in a twisting fall to the aisle.

Following a jury trial, a verdict was returned in favor of the defendants City of Buffalo and the Buffalo Bills.  From the judgment entered on this verdict the plaintiff appeals, asking us to review several evidentiary rulings made by the trial court during the course of the trial which resulted in the exclusion of evidence which plaintiff believed was favorable to his case.

At the trial the plaintiff testified that the day following the accident (Monday) he called James Duggan, supervisor of maintenance at the stadium, to report this incident and was referred by Duggan to Mr. Figliola, the stadium director.  It appears from the testimony that Mr. Figliola is ostensibly the man in charge of the stadium and was the proper person to receive this report.  After plaintiff advised Figliola where the accident occurred, Figliola allegedly said " we've had trouble in that section before."  The trial court excluded this testimony, holding it to be hearsay and not part of the " *res gestae* ".  Plaintiff also made an offer of proof respecting the condition of the bleachers nearby and adjacent to the site of the accident prior to the date of the accident as bearing on the issue of the manner of maintenance of the benches.  The trial court sustained an objection to this offer stating " Counsel  *  *  *  I'm going to narrow

you down to the very area in which the accident happened, being the particular spot. If he observed that, he may testify to it, not general observations of some other area  *  *  *  around him.''

We have concluded that the offer of proof respecting the condition of the nearby bleachers was improperly excluded.

Duggan, the maintenance supervisor and an employee of the defendant City of Buffalo, testified that he had an experienced crew working under him and that these men made an inspection of the condition of the stadium each week, just before the football game, section by section walking from the top row of the stadium to the bottom row. He stated that his men checked the seats in each aisle and determined whether any of them were in need of repair. Duggan asserted that by means of this visual observation, the crew members could tell whether the area around the bolts in the 2 inches by 4 inches fir planks from which the wooden benches are made had loosened, whether there were weather deterioration, dry rot, slivers, cracking, warping, etc. of the wood. He testified further that if any board looked questionable his men sat down on the bench and tried it out by bouncing on it. He stated that this policy of maintenance and replacement had been followed for the 19 years he had been supervisor of maintenance at the stadium up to and including September 8, 1968, the date of plaintiff's accident. He did concede, however, that there was no sign posted anywhere in the stadium warning patrons not to walk on the bleachers.

The plaintiff offered testimony through Robert Beckman, at that time plaintiff's son-in-law, present with plaintiff at the game on September 8, with respect to the general condition of the bleachers in the immediate vicinity of the accident at one of the two preseason games in 1968 (within several weeks of the accident) and the condition of this same bleacher area during 1966 and 1967 when witness Beckman was present for every home game.

The general rule with respect to showing the condition of an object by a part thereof is as follows: '' The condition of an object or place may be shown by the condition of a part thereof, provided the part is so related to the whole object or place that similarity of condition is logically probable. This principle receives frequent application where the question of controversy is the condition of highways, machines, buildings, railway tracks, stations, and roadbeds. Thus, where the plaintiff was injured by the fall of a telegraph line, the fallen condition at other near places and times was admitted to show the defective and negli-

gent nature of construction.'' (Richardson, Evidence [9th ed.], § 199).

Since Duggan in his testimony considered the entire bleacher area as a whole, the section above quoted would be applicable. Merely because one bleacher section is in a poor condition of repair, it does not necessarily follow that another adjacent section was in such condition, but it is an inference which the jury should have been able to ponder, especially with a view to impeaching Duggan's credibility.

Another section of Richardson provides: '' Proof of the condition of an object at an earlier time gives rise to a presumption that the condition existed as long as its nature and the surrounding circumstances would ordinarily allow it to continue '' (Richardson, Evidence [9th ed.], § 198).

Duggan's testimony refuted the presumption of continuity espoused in section 198. But on any given game day, if a patently dangerous condition existed, then the maintenance procedures may well have been less than is necessary to relieve defendants of liability in view of the testimony concerning the all-encompassing maintenance procedures in effect at all times. When it has been shown or is reasonable to assume that no substantial change has occurred, the prior or subsequent condition of an area is admissible to establish its condition at a particular time. Since a change of condition is not presumed, the burden of showing this fact rests upon the party asserting it (Fisch, New York Evidence, § 208).

In this case the offered testimony of the witness Beckman with respect to the condition of the bleachers in the immediate vicinity of section 1 should have been received only with respect to his observations during the 1968 preseason games. His testimony respecting 1966 and 1967 is too remote in time, however, and may not be received.

We note finally, however, that Beckman's testimony, to be meaningful, must direct itself to the condition of the bleachers on the day of the game but prior to their inhabitation by the crowd, since the repairs were supposedly made on the day preceding each game. Otherwise the testimony would not be probative, since at all other times the maintenance procedure testified to by Duggan presumes that the wear and tear of the crowd renders the benches defective.

We turn now to the alleged statement of Figliola '' we've had trouble in that section before.''

The question to be resolved in this case is the scope of Figliola's authority. It is important to distinguish between authority to do an act and authority to talk about it.

A statement made by an agent without authority does not in general bind his principal unless it constitutes a part of the *res gestae*. This long-standing rule prevents an agent after the wrong is complete from endeavoring to excuse his own acts and to throw the blame on his principals (*Luby* v. *Hudson Riv. R. R. Co.*, 17 N. Y. 131 — statement of a streetcar motorman that the brakes were out of order made after an accident held inadmissible); or where the facts show that the agent has authority to act but do not reveal any authority for the agent to make statements, it prevents statements disserving to the principal from being admissible against the principal on the issue of liability (*Golden* v. *Horn & Hardart Co.*, 244 App. Div. 92, affd. 270 N. Y. 544 — statement of assistant manager of defendant's automat to busboy " I told you to take care of those stairs " made after plaintiff fell held inadmissible).

However, " Where an agent's responsibilities include making statements on his principal's behalf, the agent's statements within the scope of his authority are receivable against the principal [citations omitted]. Such authority may extend even to admissions of the principal's liability for injuries to others, if the agent's responsibility extends this far " (*Spett* v. *President Monroe Bldg. Corp.*, 19 N Y 2d 203, 206). In *Spett* (*supra*) the testimony of the agent in whom complete managerial responsibility for running the defendant company was vested, and who, the court concluded, was defendant's spokesman was held to be admissible.

Similarly where the declaration is made during the agent's employment and pertains to the matter at hand it is admissible (*Stecher Lithographic Co.* v. *Inman*, 175 N. Y. 124 — agent left in full charge of certain machine and would look after all the particulars pertaining thereto), or where the agent was, in effect, the general manager of the defendant so that if he had operated the institution as an individual venture he could make an admission, then, the agent's statements are admissible although hearsay and not part of the *res gestae* (*Davison* v. *Long Is. Home*, 243 App. Div. 791). The statement of an agent specifically employed to prepare accident reports was received as an admission of liability made by employer itself under a " definitely recognized exception to the hearsay rule, its competency or relevancy cannot be affected by the question whether the party making it had personal knowledge or merely information as to the

fact admitted '' (*Matter of Anthus* v. *Rail Joint Co.*, 193 App. Div. 571, 572, affd. 231 N. Y. 557).

The modern trend with which we concur is stated in the Restatement of the Law of Agency which provides that statements to third persons '' are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter '' (Restatement 2d, Agency, § 286).

The common-law requirement of a showing that the making of the statement was itself within the agent's authority finds general support in the texts (Richardson, Evidence [9th ed.], § 329); Fisch, New York Evidence, § 800). Consistent with the development of a more liberal approach favoring admissibility is the view expressed in the Model Code of Evidence which does not require authority to make the statement a prerequisite to its admissibility. Instead it adopts a rationale that an agent speaking about a transaction within his authority to perform is more likely to be telling the truth about it at that time than when later summoned and asked to give testimony against his employer's interest (Model Code of Evidence, rule 508). Further, the result in *Golden* v. *Horn & Hardart Co.* (*supra*) may no longer be viable (see *Bransfield* v. *Grand Union Co.*, 24 A D 2d 586, affd. 17 N Y 2d 474 — statement of defendant Grand Union's manager to another employee after customer fell '' I thought I told you to clean that up '' held admissible over dissents in each court which cited *Golden* v. *Horn & Hardart Co., supra*).

After stating the rules we believe applicable, we find the record insufficient for us to determine Figliola's authority to make the statement in question or indeed to make any statement concerning the subject matter of plaintiff's fall.

Upon the retrial of this case further evidence should be adduced respecting Figliola's authority, to determine the extent of his responsibility, upon which the trial court may then make a determination respecting the admissibility of his statement.

The judgment should be reversed and a new trial granted.

Marsh, J. P., Witmer, Simons and Henry, JJ., concur.

Judgment unanimously reversed on the law and facts with costs and a new trial granted.