COLDWELL BANKER RESIDENTIAL REAL ESTATE SERVICES OF ILLINOIS, INC., Plaintiff-Appellee, v. JACK E. JEPSEN, Defendant-Appellant.

Second District   No. 2—87—1021

Opinion filed July 22, 1988.

Rathje, Woodward, Dyer & Burt, of Wheaton (Gary L. Taylor, of counsel), for appellant.

Hannon & Scalzo, of Oak Brook (Michael J. Scalzo, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Jack Jepsen, appeals from a jury verdict awarding a broker's commission of $23,500 to plaintiff, Coldwell Banker, pursuant to an exclusive listing contract entered into by the parties. On appeal, defendant contends the jury verdict was against the manifest weight of the evidence and the jury was improperly instructed. We affirm.

In November 1984, defendant contacted Jera Lloyd, a personal friend and real estate associate with plaintiff, regarding his interest in possibly selling his house located in the Brookeridge subdivision in Downers Grove. Subsequently, defendant agreed to meet Lloyd and William Kimball of the Hinsdale office of Coldwell Banker at his home. At this meeting, the parties entered into an exclusive listing contract. Before signing the contract, defendant asked if he would still have to sell the house if he changed his mind and decided not to sell. Lloyd testified she told defendant that he would not be forced to sell the house; rather, it would be taken off the market if he so desired. Kimball corroborated Lloyd's account of the conversation. Defendant's testimony regarding this conversation was similar, except he claimed either Lloyd or Kimball stated he could have the listing cancelled.

Four days after the exclusive listing contract was signed, Lloyd testified defendant telephoned her and stated he had changed his mind and did not wish to sell his house. According to Lloyd, defendant explained the plans for construction of his new home on an adjacent lot were not firming up and he was leaving the country for a few weeks.

Lloyd told defendant the house would be taken off the market. She explained to defendant that taking a house off the market meant defendant could not list it with another broker, the house would be taken out of the multiple listing service, the "For Sale" sign and key-box would be removed, and in essence, Coldwell Banker would not try to sell the house.

Defendant claimed on direct examination he told Lloyd to cancel the listing; however, on cross-examination, he equivocated as to whether he made such a request. Neither party memorialized the conversation in writing. After this conversation, Lloyd removed the house from the market in the manner she had communicated to defendant.

Two months later, Kimball became aware that defendant was showing his home to the Cavanaughs. A mutual friend of defendant and the Cavanaughs had suggested the Cavanaughs, who were interested in purchasing a home in the Brookeridge subdivision, contact defendant to see if he was interested in selling his house. Lloyd telephoned defendant to confirm Kimball's suspicions. Defendant admitted he was thinking of selling the home to the Cavanaughs and asked if he would still owe a commission to plaintiff. The next day an agent of plaintiff called defendant and told him he would be liable for the commission.

A month later, Lloyd telephoned defendant at the request of Kimball. Defendant told Lloyd he did not want Kimball to show the house; he felt plaintiff had not done anything to sell the house. Kimball also called defendant during this time period and received a similar response to his efforts to become involved in the sale of the house to the Cavanaughs. Plaintiff sent two letters to defendant indicating the listing was still in effect even though the property had been withdrawn from the multiple listing service and that a commission would be due in the event of the sale of the property. Shortly thereafter, defendant's sale of the property to the Cavanaughs was closed.

Following defendant's refusal to pay the commission, plaintiff filed a complaint alleging breach of contract. In response, defendant raised affirmative defenses alleging he revoked the contract or, alternatively, rescinded the contract. The jury was given instructions setting forth defendant's affirmative defenses. The jury verdict in favor of plaintiff was upheld by the trial judge in response to defendant's motion notwithstanding the verdict and motion for new trial.

Defendant first argues the jury verdict was against the manifest weight of the evidence, the trial court erred in denying his motion for judgment notwithstanding the verdict, and the trial court erred in de-

nying his request to set aside the verdict in his motion for a new trial. The gist of defendant's argument is that the evidence even when viewed in the light most favorable to plaintiff clearly established he revoked the exclusive listing contract during his telephone conversation with Lloyd four days after the exclusive listing contract was signed.

An ordinary contract of agency created by an exclusive listing agreement is a unilateral offer and can be revoked at any time and under any circumstances by the principal, provided the revocation is in good faith. (*Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 990; *Nicholson v. Alderson* (1952), 347 Ill. App. 496, 507-08.) Absent a statutory or contractual provision to the contrary, notice of revocation may be either oral or written. (3 Am. Jur. 2d *Agency* §45 (1986); see *Thakral v. Mattran* (1987), 156 Ill. App. 3d 849, 854-55.) Express notice of the termination of the agency is not essential if the agent knows, has reason to know, or should know of such fact or has been given notification of the occurrence of an event from which the inference of termination could reasonably be drawn. *Van Houten v. Trust Co.* (1952), 413 Ill. 310, 314.

Here, the exclusive listing contract did not contain any reference to termination of the agreement other than at the conclusion of the six-month period. In view of the aforementioned principles of law, the dispositive question is whether the defendant effectively terminated the agency relationship with defendant during his telephone conversation with Lloyd. It is undisputed that defendant requested the house be taken off the market because he had changed his mind and decided not to sell. Too, following this request, the realtor removed the "For Sale" sign and the keybox, cancelled the listing with the multiple listing service, and ceased efforts to market the property. In our opinion, the statement by defendant coupled with plaintiff's conduct in response was insufficient to revoke the exclusive listing agreement.

In *Nicholson*, the parties entered into an exclusive listing agreement that did not contain a provision for termination or revocation. During the listing period, the seller sent the broker a letter advising that the "property is being withdrawn from your listings as of this date." The court held receipt of the letter terminated the broker's authority to sell the property and thereby effectively revoked the exclusive listing agreement. (*Nicholson*, 347 Ill. App. at 507-08; see *Goetz v. Ochala* (1913), 180 Ill. App. 458; *Pretzel v. Anderson* (1911), 162 Ill. App. 538.) Had it been undisputed that defendant told Jera Lloyd he wished to cancel the "listing," the exclusive listing contract would

have been effectively revoked.

The credible evidence presented indicated, however, that defendant did not mention cancelling the listing; rather, he only requested the house be taken off the market because he did not wish to sell. Although defendant did not indicate whether his desire not to sell was temporary or permanent, we believe, based on defendant's statements that progress on his new home was delayed and he was leaving the country for a period of time, it was reasonable for the jury to infer that defendant's change of heart was of a temporary nature. Furthermore, based on the evidence, it was reasonable for the jury to conclude that defendant did not state that he wished to cancel the listing agreement.

■ A jury verdict will not be disturbed by a court of review unless it is against the manifest weight of the evidence. (*De Fosse v. Cherry Electrical Products Corp.* (1987), 156 Ill. App. 3d 1030, 1034.) A verdict is against the manifest weight of the evidence if it is palpably erroneous and wholly unwarranted or it appears to be arbitrary, unreasonable and not based upon evidence. (*Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 272.) A jury verdict will not be set aside merely because the jury could have drawn different inferences and conclusions. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 530.) In our view, the jury verdict in the present case was supported by reasonable inferences and conclusions drawn from the evidence presented. Therefore, we decline to disturb the jury verdict.

Defendant also challenges the propriety of plaintiff's instruction No. 15, which provided:

> "An exclusive listing contract can be prematurely terminated at the will of the owner by the owner revoking the authority granted the real estate broker to sell the owner's property, if the owner clearly gives notice to the broker that he has done so.
>
> Whether or not the authority of plaintiff to act under the exclusive listing contract, which is presently before you, was revoked by the defendant, is for you to decide."

Defendant contends the last clause in the first paragraph should not have been included because it led the jury to believe some special language or "clear" notice was required and connotated a requirement that plaintiff had construed the notification as a revocation when plaintiff's acquiescence was unnecessary. Defendant further contends the instruction was improper because it did not include the caveat that revocation of a listing agreement is effective anytime before it is accepted by the procurement of a purchaser and the requirement that

the revocation be made in good faith. Plaintiff responds that the instructions when read as a whole correctly stated the law and any error was minor or harmless.

■■ The standard for determining the adequacy of jury instructions is whether, taken as a whole and in series, they fairly, fully and comprehensively apprise the jury of the applicable legal principles. (*Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 317.) We have reviewed the instructions given to the jury and conclude they adequately set forth the applicable law and did not mislead the jury.

■■ Defendant's instruction No. 17 was given and provided:

"A real estate broker has notice that authority to do an act has been revoked, if he knows or has reason to know, should know, or has been given notification of the occurrence of an event from which the inference of revocation reasonably would be drawn."

In addition, defendant's instruction No. 21 was also tendered to the jury and provided:

"When I use the term 'revoked plaintiff's authority' or 'revocation of plaintiff's authority,' I mean an act or statement by defendant to revoke the authority of plaintiff under the Exclusive Listing Contract, to sell defendant's property and of which act or statement by defendant to revoke the plaintiff has notice."

In view of these instructions, which thoroughly set forth the rule of law stated in *Van Houten*, we do not believe the use of the word "clearly" misinformed or misled the jury. Rather, defendant's instructions Nos. 17 and 21, when read in conjunction with plaintiff's instruction No. 15, provide an accurate guideline for determining whether defendant revoked the agreement.

As to defendant's other contentions, there was no dispute that defendant contacted plaintiff before plaintiff had procured a purchaser. Therefore, the fact that revocation may occur anytime before plaintiff procured a purchaser (see *Lehman*, 107 Ill. App. 3d at 990) is not at issue and could not have misinformed or misled the jury. Similarly, whether defendant acted in good faith on December 22 is not in dispute. Defendant's dealings with the Cavanaughs did not commence until sometime in February.

The ultimate question was whether defendant's statement to Lloyd that he wanted to take the house off the market was sufficient to revoke the agency relationship established by the exclusive listing agreement. The parties made this clear throughout trial and in closing argument. The jury instructions adequately set forth the pertinent

law and, in our view, would not have led the jury to reach a different determination.

The judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.