876 P.2d 653 (1994)
117 N.M. 723
DAVE ZERWAS COMPANY, Plaintiff-Appellant,
v.
JAMES HAMILTON CONSTRUCTION COMPANY, INC., Defendant-Appellee.
No. 21358.
Supreme Court of New Mexico.
June 16, 1994.
Steven Schmidt, John W. Danfelser, Albuquerque, for appellant.
Lamb, Metzgar & Lines, P.A., Jeffrey A. Dahl, Albuquerque, for appellee.

OPINION
BACA, Justice.
Plaintiff-Appellant, Dave Zerwas Company ("Zerwas") appeals from the judgment entered in favor of Defendant-Appellee, James Hamilton Construction Company, ("Hamilton"). Zerwas filed suit against Hamilton alleging that Hamilton owed Zerwas a real estate commission and gross receipts tax based on an exclusive real estate listing contract. On appeal we address one issue: Whether conduct alone can serve as consent to the cancellation of an exclusive listing contract when the exclusive listing contract is within the Statute of Frauds, NMSA 1978, § 47-1-45 (Repl.Pamp.1991).[1] We review this case pursuant to SCRA 1986, 12-102(A)(1) (Repl.Pamp.1992), and affirm.

*654 I
On December 4, 1989, Hamilton and Zerwas entered into an Exclusive Right to Sell/Lease Contract (hereinafter "the Agreement"). The Agreement provided for a ten percent commission on the sale price of the property plus the applicable gross receipts tax on the commission if the property sold between December 1, 1989, and December 1, 1990. B.R. Fjord, a salesman for Zerwas, was the active agent on the Hamilton property and communicated offers to Hamilton made by prospective purchasers. Because none of these offers were for cash, Hamilton turned them all down. Zerwas had informed Fjord that he preferred to sell the property for cash. Fjord's marketing of the property included placing a sign on the property measuring four feet by eight feet, making phone calls, and running a single ad in the local newspaper for one day. At the end of March 1990, Fjord lost his driver's license due to a DWI conviction and took an extended leave of absence from Zerwas. Hamilton was unaware that Fjord had ceased working for Zerwas and Hamilton did not receive any correspondence from Zerwas or Fjord until May 4, 1990. Pursuant to a clause in the Agreement providing for cancellation of the listing with consent of the broker (Zerwas), on March 3, 1990, Hamilton, through its secretary/treasurer, L.H. Rogers, wrote to Zerwas stating that Hamilton wished to cancel the Agreement effective with the date of the letter. After Zerwas received Hamilton's letter stating his intention to cancel the Agreement, Zerwas called Hamilton and requested a thirty day extension of time to follow up on the possible sale of the property to a buyer named Sanchez. Hamilton agreed to the thirty day extension and also agreed to an additional thirty day extension that Zerwas requested by letter dated May 25, 1990, to allow Sanchez time to complete his financing.
On June 6, 1990, Johnnie Head, a salesman for Zerwas, told Hamilton that Sanchez had not received the appropriate financing. That same day, Roxanne Fields, an agent of Hamilton, signed an exclusive listing agreement with Jackie Fisher, a real estate broker in Cibola County, for the sale of the property originally listed with Zerwas. From June 6, 1990, through August 1990, Zerwas did not attempt to market the Hamilton property in any way and no purchasers were procured for the property by Zerwas. Jackie Fisher, however, showed the property to representatives of the Cibola County Commission ("the County") in an effort to market the property to the County for a County Road Department. At a County meeting in mid-August 1990, Ben Aragon, a representative of Jackie Fisher, presented Hamilton's property for the potential housing of their road department. At the same meeting, Head, Zerwas's representative, presented another piece of property as a potential location for the road department. The County selected and approved the Hamilton property and purchased it for $232,000.
Zerwas filed suit against Hamilton for his commission and gross receipts tax on the sale of the property. Zerwas then filed a motion for summary judgment, which was denied, and the merits of the case were tried to the court below without a jury. The trial court entered judgment for Hamilton finding that Zerwas consented to Hamilton's cancellation of the contract through its actions. Zerwas appeals from that judgment.

II
On appeal we address whether Zerwas, by its conduct, consented to Hamilton's request that the Agreement be cancelled. Zerwas first argues that Hamilton could not cancel the exclusive listing contract. This argument is easily disposed of because Zerwas provided a cancellation clause in the Agreement. Hence, Hamilton had the ability to cancel the Agreement. The question left before this Court is whether consent to the cancellation by Zerwas was required to be in writing to be effective. Zerwas relies on this Court's opinion in Yrisarri v. Wallis, 76 N.M. 776, 418 P.2d 852 (1966), and argues that because the Agreement comes within the Statute of Frauds, any cancellation of the written contract is also required to be in writing. We cannot agree.
First, we find Zerwas's reliance on Yrisarri to be misplaced. Yrisarri dealt *655 with the modification of a real estate brokerage agreement, not the cancellation or rescission of one. The Yrisarri Court property held that a modification to an agreement within the Statute of Frauds must be in writing. Such a modification must be in writing because it is, in essence, a new agreement and must therefore meet the requirements of the Statute of Frauds.[2] Here, however, the question before this Court involves the cancellation of a real estate brokerage agreement.
The Agreement between Hamilton and Zerwas provided that "[c]ancellation of this listing can only be made with the consent of the listing [broker]." Hamilton wrote to Zerwas on May 3, 1990, requesting that the Agreement be cancelled. Zerwas asked Hamilton for sixty more days because he had a prospective buyer who had not yet obtained the necessary financing. After the sixty days had passed and the prospective buyer did not receive the proper financing, Zerwas did not attempt to market the property further. In fact, Zerwas did not complain when Jackie Fisher removed Zerwas's sign from the property and competed with Jackie Fisher by presenting a different property to the County for their road department. Moreover, at no time prior to the County's purchase of the Hamilton property did Zerwas express concern that Jackie Fisher had undertaken the marketing of the property. The majority rule recognizes that "a written executory contract within the Statute of Frauds may be rescinded orally." John D. Calamari and Joseph M. Perillo, Contracts § 19-37 (3d ed. 1987); see also 72 Am.Jur.2d Statute of Frauds § 282 (1974) (stating that "the trend of modern authority seems to be toward the view that an oral rescission of an executory contract is valid notwithstanding that the contract rescinded was one required by the statute of frauds to be in writing."); Restatement (Second) of Contracts § 148 (1981) (stating that "[n]otwithstanding the Statute of Frauds, all unperformed duties under an enforceable contract may be discharged by an oral agreement of rescission."); 4 W. Jaeger, Williston on Contracts § 592 (3d ed. 1961) (stating that "[i]f an executory contract is within the Statute of Frauds and is in writing ... a subsequent oral agreement to rescind the contract is effectual if the oral agreement fulfills the requisites of a contract at common law."); 2 Corbin on Contracts § 302 (1950) (same). We agree with the Appellate Court of Illinois that "[e]xpress notice of the termination of the agency is not essential if the agent knows, has reason to know, or should know of such fact or has been given notification of the occurrence of an event from which the inference of termination could reasonably be drawn." Coldwell Banker v. Jepsen, 172 Ill. App.3d 662, 122 Ill.Dec. 707, 710, 527 N.E.2d 79, 82 (2d 1988). Although the Illinois Appellate Court held in favor of the broker, finding that the vendor had only requested that the home be taken off of the market because the vendor no longer wished to sell, the Illinois court also stated that "[h]ad it been undisputed that the defendant told [the broker] he wished to cancel the `listing,' the exclusive listing contract would have been effectively revoked." Id. Hamilton informed Zerwas by letter that he wished to cancel the Agreement. Zerwas requested sixty additional days because he had a prospective buyer. When the prospective buyer failed to obtain financing, Zerwas ceased all marketing of the property and ceased all correspondence with Hamilton until after the property was sold by Jackie Fisher. We agree with the trial court that through its actions, Zerwas effectively consented to the cancellation of the Agreement pursuant to the provision for cancellation provided for in the Agreement between Hamilton and Zerwas.
Zerwas suggests that the whole purpose behind the Statute of Frauds would be *656 abrogated were this Court to allow the cancellation of an exclusive listing contract through conduct alone. We disagree and direct the parties to Justice Spear's well-reasoned dissent in Givens v. Dougherty, 671 S.W.2d 877, 879-880 (Tex.1984) (Spears, J., dissenting). In his dissent, Justice Spears disagreed with the majority opinion that a listing agreement cannot be orally rescinded and stated that " [[t]he] purpose [of the statute] is to prevent fraud arising from parol testimony as to the terms and conditions of such contract.' In other words, the purpose of the Statute of Frauds is to fix the specific terms of the agreement between the parties. Here, on the other hand, there is no dispute as to the terms; the question is whether the contract has been discharged." Id. at 879 (quoting Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, 516 (1946)). Accordingly, the judgment of the trial court is AFFIRMED.
IT IS SO ORDERED.
MONTGOMERY, C.J., and FRANCHINI, J., concur.
NOTES
[1] Zerwas also asserts that the trial court erred in dismissing James Hamilton individually and substituting James Hamilton Construction Company as Defendant. Our resolution of the primary issue in this case obviates the need to address that issue as no liability on the part of either James Hamilton individually or James Hamilton Construction Company will ensue.
[2] We also find Zerwas's argument that parol evidence is not admissible to show cancellation of the contract meritless. Zerwas relies on Yrisarri for this argument. A proper reading of Yrisarri, however, reveals that parol evidence is not admissible to "contradict, vary, modify, or add to a written agreement." 76 N.M. at 779, 418 P.2d at 854 (quoting Maine v. Garvin, 76 N.M. 546, 550, 417 P.2d 40, 43 (1966). We fail to see how the evidence surrounding the cancellation of the Agreement pursuant to a cancellation clause provided for in the Agreement implicates the parol evidence rule.