889 P.2d 1212

**DIVERSIFIED DEVELOPMENT & INVESTMENT, INC., Plaintiff–Appellant,**

**v.**

**Helga HEIL and Dorothy S. Holmberg, co-personal representatives of the Estate of Anne Pickard, deceased, and the Estate of Anne Pickard, Defendants/Third–Party–Plaintiffs–Appellees,**

**and**

**Patrick Hurley and Lee Welsh, Defendants/Third–Party–Defendants–Appellees.**

**No. 21320.**

Supreme Court of New Mexico.

Jan. 25, 1995.

Dubois, Caffrey, Cooksey & Bischoff, P.A., William J. Cooksey, Albuquerque, for appellant.

Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Joseph Goldberg and K. Lee Peifer, Albuquerque, for appellees Helga Heil et al.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Bruce Hall and Edward Ricco, Albuquerque, for appellee Patrick Hurley.

Gallagher, Casados & Mann, P.C., Nathan Mann, Albuquerque, for appellee Lee Welsh.

## OPINION

RANSOM, Justice.

Diversified Development & Investment, Inc., sued the estate of Anne Pickard and its personal representatives, Helga Heil and Dorothy Holmberg, (collectively, "the Estate") for breach of contract, misrepresentation, and prima facie tort in connection with a contractual option to purchase real estate. After the Estate filed a third-party claim for indemnification and legal malpractice against its attorney, Patrick Hurley, Diversified Development filed a claim against Hurley for breach of contract, misrepresentation, and prima facie tort, and asked for punitive damages. Before ruling on a motion filed by Diversified Development to compel discovery, the district court granted summary judgments in favor of the Estate and Hurley.

Diversified Development appeals pursuant to SCRA 1986, 12–102(A)(1) (Repl. Pamp.1992) (count sounding in contract). We find that the court erred in granting summary judgment before ruling on the motion to compel discovery. We therefore reverse the judgment in favor of the Estate on Diversified Development's claim that Hurley had actual authority to grant an extension of the purchase option. Further, we hold that the trial court should compel discovery of certain communications between the Estate and Hurley. Finally, we find that Diversified Development raised a genuine issue as to Hurley's actual or apparent authority to communicate whether the Estate agreed to an extension of the option deadline. We therefore hold that, on remand, Diversified Development may pursue its theory that Hurley's statements thus could bind the Estate.

*Facts.* In March 1990 Diversified Development executed an agreement with New Jersey residents Heil and Holmberg in which Diversified Development was given a six-month option to purchase approximately sixteen acres of unimproved Albuquerque real estate for $575,000. The agreement empowered Diversified Development to extend the purchase option for an additional six months upon written notification to the Estate. Diversified Development exercised this right to an extension in a letter delivered to Hurley from Diversified Development's attorney, Ray Baehr. This extension gave Diversified Development until March 31, 1991, to exercise the purchase option.

In February 1991 Diversified Development asked Lee Welsh, a real estate agent for the Estate, to determine whether the Estate would consider modifications to the agreement's financing terms. Diversified Development's president, Chester Hearn, testified that Welsh assured him he had talked to Heil and Holmberg and that they were receptive to "some modifications of the financing arrangements." Diversified Development emphasized to Welsh that it wished to retain the right to exercise the original purchase option if financing modifications could not be worked out.

In a letter sent to Welsh, Heil, Hurley, and Baehr dated March 22, 1991, Diversified Development put its financing modification request in writing. In this letter Hearn reaffirmed Diversified Development's intent to purchase the parcel of land and requested a ninety-day extension of the existing option pending execution of the modified agreement. Baehr testified that during the week of March 25 he telephoned Hurley to inquire about the status of the March 22 extension request and to set up a meeting before the March 31 option deadline to discuss whether the Estate would accept the alternative financing proposal. He testified that Hurley was not able to meet with him but assured him that "a few days one way or another [will] not make any difference" and "these

ladies are not going to hold [Diversified Development] to the [option deadline.]"

Hurley conceded only that on March 29 he told Baehr he had talked to Heil and that the Estate "probably [would] agree to an extension—possibly more." He stated that Heil told him it would be after the March 31 deadline before she could say whether the Estate was amenable to accepting an alteration of the option. Heil insisted that Hurley had no authority to tell Baehr that the Estate "probably [would] agree to an extension" but acknowledged that Hurley did have authority to discuss an extension.

Baehr and Hurley agreed to meet on April 4. At this meeting Diversified Development and Baehr discussed the March 22 financing proposal with Hurley and Welsh and inquired whether the option would have to be exercised as written. Hearn testified that at the conclusion of the meeting he asked for a written extension but Hurley insisted that one was not necessary because Diversified Development would get an answer on the financing proposal in a few days. Hearn also stated that Hurley assured Diversified Development it could exercise the original purchase option if the Estate did not agree to financing modifications.

Between April 4 and April 25 Hurley had several conversations with Heil about the proposed modifications. Hurley did not know that the Estate would not extend the option, however, until either April 25 or May 2. On May 1 Heil and Holmberg faxed a letter directly to Baehr rejecting the proposed financing modifications and stating that the Estate was "reviewing [its] options" and would attempt to obtain a better price for the land. On May 8 Welsh told Hearn that the Estate considered the purchase option to have expired.

On May 9 Diversified Development deposited earnest money in the amount called for by the option agreement into escrow and notified Hurley, Welsh, and Heil that it was exercising the original purchase option. On May 11 the Estate instructed the escrow agent to return the earnest money to Diversified Development and to record a termination statement. Approximately three months later the Estate accepted a purchase offer for $800,000 from another buyer.

*Proceedings.* On February 25, 1993, following minimal pretrial discovery, Diversified Development filed a motion to compel production of memos written by Hurley detailing his conversations with Heil about the March 22 extension request. Hurley refused to produce these memos, claiming attorney-client privilege. The motion to compel also sought production of withheld portions of Heil's telephone diary detailing conversations with Welsh and Hurley. Hurley joined in Diversified Development's motion, arguing that Heil had waived the attorney-client privilege by bringing an action against him and by offering evidence of some of the communications. The court held a motion hearing on March 11 but did not rule.

The Estate and Hurley filed motions for summary judgment on February 15 and 19 respectively. On March 26 and 29 those motions were heard and on April 6 the court issued a letter decision ruling in favor of the Estate and Hurley. The court stated that it assumed Diversified Development's motion to compel discovery to be moot as a result of its ruling. The trial court found it undisputed that Hurley lacked actual or apparent authority either to make final decisions for the Estate or to grant an extension. Based on this finding, the court determined that there was no support for the contract claim. The court also determined that "Hurley made no misrepresentations for which his principals could be held liable." Finally, the court found as a matter of law that the facts of the case did not support the prima facie tort claim.

With regard to Diversified Development's claims against Hurley, the court determined that Diversified Development could not state a contract claim because Hurley was not a principal and commented that the nature of the extension was too nebulous to represent a "meeting of the minds as to what the duties and obligations of the parties were." The court also determined that recovery against Hurley for prima facie tort was not supported by the facts, and that Hurley's representations were unactionable opinions upon which Diversified Development could not rea-

sonably have relied. Finally, the court found that Hurley had no duty to disclose to Diversified Development his lack of authority to grant an extension.

*The motion to compel discovery.* The major issue in this case is whether Hurley had actual or apparent authority to bind the Estate to an extension of time within which Diversified Development could exercise the purchase option. Diversified Development argues that because it was denied the opportunity to discover facts defining the nature and scope of Hurley's authority, it did not have the ability to defeat summary judgment motions by the Estate and Hurley. The Estate counters that Diversified Development waived any objection to the court's decision by failing to object to the court's mootness ruling when summary judgment was granted. On the merits, the Estate claims an attorney-client privilege against discovery.

■ —*Diversified Development preserved the issue.* To preserve an issue for appeal, "it must appear that a ruling or decision by the district court was fairly invoked." SCRA 1986, 12–216(A) (Repl.Pamp.1992); *see also* SCRA 1986, 1–046 (Repl. Pamp.1992). The purpose of requiring a party to invoke a ruling or decision by the district court is to alert the trial judge to a claim of error and give the judge an opportunity to correct any mistake. *Madrid v. Roybal,* 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991); *see also Cockrell v. Cockrell,* 117 N.M. 321, 323–24, 871 P.2d 977, 979–80 (1994) (holding that challenge to sufficiency of evidence was not brought to the attention of trial court and thus was not preserved).

In its response to the Estate's motion for summary judgment Diversified Development requested "that the Court's decision on Summary Judgment be continued pursuant to SCRA 1986, 1–056(F) [ (Repl.Pamp.1992) (allowing a trial judge to deny a motion for summary judgment when it appears that the party opposing the motion needs more discovery to obtain facts supporting his position) ], until such time as the Motion to Compel Discovery is decided." Diversified Development further argued, as it had done previously and more extensively in a memorandum in support of the motion to compel, that its "ability to fully demonstrate the extent of the dispute as to Hurley's authority [had] been hampered" by the Estate's claim of attorney-client privilege. Thus Diversified Development argued that a decision on summary judgment should be delayed until the motion to compel was decided.

■ By requesting the trial judge to stay his ruling on the motions for summary judgment until he had ruled on the motion to compel, by citing Rule 1–056(F), and by incorporating its prior argument that further discovery was essential to support its claims that Hurley had authority to bind the Estate, Diversified Development presented the judge with all the information necessary to make an informed decision whether the motion to compel should be decided prior to the motions for summary judgment. Diversified Development thus preserved the discovery issue.

—*Attorney-client privilege does not extend to a client's grant of actual authority.* Although appellate courts generally do not address the merits of a discovery motion before the trial court has had an opportunity to do so, *see Garrett v. City of San Francisco,* 818 F.2d 1515, 1519 n. 4 (9th Cir.1987), for purposes of judicial economy and because the parties have briefed the issue, we will address the merits of the Estate's claim of privilege. Diversified Development and Hurley urge that no privilege existed between Hurley and the Estate. Alternatively, they urge that the Estate waived any privilege by bringing a third-party claim against Hurley. The Estate counters that communications between itself and Hurley should be exempt from discovery under the attorney-client privilege set out in SCRA 1986, 11–503(B) (Repl.Pamp.1994).

Rule 11–503(B) states that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Rule 11–503(A)(4) defines a "confidential communication" as one "not intended to be disclosed to third

persons." It follows from the unambiguous definition of confidential communications and from Rule 11–503 that the Estate may refuse to disclose only those communications made for the purpose of facilitating legal services and not intended to be disclosed to others.

■ Diversified Development seeks to discover the instructions given to Hurley by the Estate and the nature and scope of his authority in regard to the purchase option deadline. "[C]ourts have held that the [attorney-client] privilege does not protect the instructions or authority given by the client to his attorney...." Paul R. Rice et al., *Attorney–Client Privilege in the United States* § 6:22, at 467–68 (1993); *see id.* § 6:22, at 468 n. 35 (citing cases that have held that a client's instructions to his or her attorney and the scope of the authority granted are not protected by attorney-client privilege). Explaining the reason for this rule, one federal court has stated that "the client's grant of authority to the attorney to settle [is not protected by the attorney-client privilege] since this must be communicated to the other party to the settlement." *Willard C. Beach Air Brush Co. v. General Motors Corp.*, 118 F.Supp. 242, 244 (D.N.J. 1953), *aff'd* 214 F.2d 664 (3d Cir.1954). Thus the attorney-client privilege does not prohibit Hurley from disclosing what the Estate authorized him to agree upon with or communicate to Diversified Development.

■ *—Incomplete discovery precluded summary judgment on actual authority claim.* Generally, "a court should not grant summary judgment before a party has completed discovery, ... particularly when further factual resolution is essential to determine the central legal issues." *Sun Country Sav. Bank of N.M. v. McDowell*, 108 N.M. 528, 534, 775 P.2d 730, 736 (1989) (citations omitted). Diversified Development may have been able to discover material facts in Hurley's memos and in the withheld portions of Heil's telephone diary defining the nature and scope of Hurley's authority. The court should have examined those documents and allowed Diversified Development to discover those portions detailing the Estate's instructions to Hurley and the scope of his authority in connection with the extension of the option

deadline. *See Garrett*, 818 F.2d at 1519 ("It was error for the trial court to have granted defendants' motion for summary judgment without first having determined the merits of plaintiff's pending [motion to compel discovery]."); *Snook v. Trust Co. of Georgia Bank of Savannah*, 859 F.2d 865, 871 (11th Cir. 1988) ("By failing to rule on the motion to compel, the district court deprived the plaintiffs' of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the [summary judgment] motion."). Summary judgment was therefore improper on Diversified Development's claim that Hurley had actual authority to grant an extension of the option deadline.

■ *Hurley did not have apparent authority to agree upon an extension.* In *Romero v. Mervyn's*, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989), we stated that "a principal ... is responsible for the acts of the agent when the principal has clothed the agent with the appearance of authority." Apparent authority arises from manifestations by the principal to the third party "and can be created by appointing a person to a position that carries with it generally recognized duties." *Id.* Because the facts necessary to prove apparent authority would be known by Diversified Development without further discovery, we decide whether summary judgment was appropriate on the issue of Hurley's apparent authority to grant an extension of the option deadline.

The record establishes that the purchase agreement could be modified only in writing. The record further establishes that the Estate did not communicate directly with Diversified Development or its attorney prior to the May 1 letter rejecting the proposed financing modifications. As an attorney himself, Baehr knew or should have known that an attorney does not have implied authority to approve the modification of an agreement. *See Augustus v. John Williams & Assoc., Inc.*, 92 N.M. 437, 438–39, 589 P.2d 1028, 1029–30 (1979) (stating rule that attorney does not have implied authority to compromise client's cause of action (quoting *Nehleber v. Anzalone*, 345 So.2d 822, 822–23 (Fla. Dist.Ct.App.1977))); *see, e.g., Torrao v. Cox,*

26 Mass.App.Ct. 247, 525 N.E.2d 1349, 1353 (1988) (stating that attorney has no power, absent express authority, to bind principal by his assent to modification of principal's contract). Hurley's assertion that "these ladies are not going to hold [Diversified Development] to [the purchase option deadline]," without more, did not indicate Hurley was authorized to make the decision and did not absolve Baehr and Diversified Development of the duty to make further inquiry as to the extent of Hurley's authority. *See* Warren A. Seavey, *Handbook of the Law of Agency* § 22(B), at 44 (1964) ("Persons dealing with an agent ... cannot hold the principal liable for unauthorized acts of an agent which are not normally permitted to an agent in such a position."); *Comstock v. Mitchell*, 110 N.M. 131, 132, 793 P.2d 261, 262 (1990) (stating that third party has duty to "use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of his powers" (quoting 3 Am.Jur.2d *Agency* § 82 (1986))). Therefore summary judgment on the issue of apparent authority to agree to an extension was appropriate.

■ For similar reasons, it was unreasonable for Diversified Development to infer from Hurley's above-quoted assertion that it could place any *reliance* on an implied representation by Hurley that he was binding the Estate. Thus summary judgment was appropriate on Diversified Development's misrepresentation claim against Hurley.

*Diversified Development may pursue whether Hurley's statements bound the Estate to an extension.* Diversified Development argues that the facts it has adduced raise a question whether Hurley could bind the Estate by representing to Diversified Development that the Estate *itself* agreed to an extension. As we understand the facts, Hurley's authority to bind the Estate may spring from two sources. First, it may be argued that Hurley could bind the Estate because he had actual or apparent authority to perform discretionary acts on behalf of the Estate such as granting an extension of the option deadline. We have held that summary judgment on the issue of Hurley's actual authority to grant an extension was premature in light of the pending motion to compel discovery. Further, we have held that the Estate did not place Hurley in such a position that he had apparent authority to grant an extension.

■ Second, it may be argued that Hurley had actual or apparent authority to make binding statements representing the position of the Estate. It is unclear whether Diversified Development actually argued this issue below, and consequently it is also unclear whether the trial court, as part of its grant of summary judgment, ruled that Hurley did not have speaking authority. In response to questions from this Court, the parties have supplied us with briefs on this issue. Because we have ruled that summary judgment was premature and are remanding this case for further discovery, and because we find that the trial court could not rule against Diversified Development as a matter of law on the issue of speaking authority under the facts presented here, Diversified Development would not be prohibited from claiming on remand that Hurley had speaking authority. We therefore take this opportunity to clarify the law on this issue for purposes of aiding the trial court.

■ *An agent's statements may bind the principal if the agent is authorized to speak.* When a principal gives a person authority (either actual or apparent) to do certain acts, those acts become binding on the principal because they are treated as the acts of the principal. *Cf. Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.*, 118 N.M. 140, 146, 879 P.2d 772, 778 (1994) (holding corporation liable for act of managing agent because acts of agent are acts of corporation). In the case of speaking authority, an agent who actually has been authorized to speak, or has been cloaked with the authority to speak, may bind his or her principal to perform the acts about which he or she speaks. Speaking authority differs from authority to do acts within one's discretion such as entering into a binding modification of the principal's contract with a third party. Thus an agent with speaking authority may not agree to a modification of the principal's contract but may represent the principal's position on the modification of the

contract and thereby bind the principal to that modification.

■ For the statements, representations, or admissions of a purported agent to be binding on the principal, the fact of agency must first be established. 2 Floyd R. Mechem, *A Treatise on the Law of Agency* § 1774, at 1348 (2d ed. 1914). "[T]he unauthorized statements of an agent to the third party concerning the existence or extent of his authority cannot be relied upon to establish apparent authority." *Comstock v. Mitchell*, 110 N.M. 131, 134, 793 P.2d 261, 264 (1990) (Ransom, J., specially concurring). Once the principal has manifested to a third party that another individual is his or her agent, however, statements by that agent regarding the extent of authority may bear upon whether, without further inquiry of the principal, the third party reasonably relied upon a belief about the extent of the agent's authority. Even then, before the agent's extrajudicial statements concerning the extent of authority may be relied upon to excuse further inquiry, the principal first must have placed the agent in a position that would give rise to a belief in a reasonably prudent third party that the authority of the agent would extend as far as represented by the agent. Thus once agency has been established, the statements, representations, or admissions made by the agent to a third party will bind the principal only if the agent was actually or apparently authorized to make the particular statements or was actually or apparently authorized to make statements on the particular subject. *See* Restatement (Second) of Agency § 286 (1957).

In this case Hurley's agency is not disputed. Hence the only question remaining is whether the facts presented an issue regarding the existence of actual or apparent speaking authority. Even if the trial court was to be the finder of fact, it could not have used the summary judgment procedure to resolve a disputed issue of fact. *See Bergerson Plumbing & Heating, Inc. v. Poole*, 111 N.M. 525, 528, 807 P.2d 223, 226 (1991) (holding that "[a] trial court should not summarily cut to a dispositive issue without trial on the merits, even when the trial court believes the ultimate disposition is foreseeable"). If Diversified Development raised facts that, if proven, might have been interpreted in such a way as to entitle it to judgment, the court must have conducted a trial on the merits. *See id.*

■ —*Actual authority to speak.* Actual speaking authority may be express or implied. *See* Restatement (Second) of Agency § 7 cmt. c (1957). Express speaking authority will exist when the principal has told the agent that he or she may make certain statements, representations, or admissions. *Id.* Implied speaking authority will exist when the principal appoints the agent to a position that normally carries with it the authority to make certain statements and from which position the agent reasonably believes that he is authorized to make such statements. Similarly, implied speaking authority will exist when the principal expressly authorizes the agent to do an act that necessarily requires the making of statements. *See* Warren A. Seavey, *Handbook of the Law of Agency* § 105(C), at 190 (1964) ("To the extent that statements are made as part of an authorized transaction, . . . a statement is authorized if the agent has reason to believe that the principal desires him to make it.").

Heil testified that Hurley had actual authority to discuss an extension of the purchase option deadline. By informing Hurley that it would not make the decision whether to agree to the financing modifications until after the March 31 purchase option deadline, the Estate gave Hurley reason to believe that it was authorizing a "grace period" during which the original option could be exercised. On remand the factfinder thus should determine whether Hurley reasonably believed Heil and Holmberg desired him to communicate to Diversified Development a temporary extension of the option agreement. If Hurley had such a reasonable belief, the Estate would be bound by Hurley's statement that "these ladies are not going to hold [Diversified Development] to the [option deadline]" regardless of whether the Estate intended Hurley to grant an extension. *See* Restatement (Second) of Agency § 26 cmt. a (1957) ("[T]he manifestation and not the intention of the principal is important; hence,

whenever the principal manifests to the agent that the agent is to act on his account, [actual] authority exists although the principal is not in fact willing that he should do so.").

 —*Apparent authority to speak.* Whether an agent has apparent speaking authority is a question that must be determined by the trier of fact in light of the agent's duties and responsibilities. *See Hartman v. Port of Seattle,* 63 Wash.2d 879, 389 P.2d 669, 673–74 (1964); *cf. Kasper v. Buffalo Bills,* 42 A.D.2d 87, 345 N.Y.S.2d 244, 250–51 (1973) (adopting rule that statements made by agent will bind principal if agent had authority to speak and remanding for determination of agent's authority and responsibilities). Further, evidence of the appearance of authority as created by the actions and words of the principal is always admissible to show that the agent has authority to speak. *See* Restatement (Second) of Agency § 286 cmt. b (1957); *see also Sigel v. Boston & M.R.R.,* 107 N.H. 8, 216 A.2d 794, 806–07 (1966) (finding sufficient evidence of speaking authority to create a jury question when negotiations over proposed railroad crossing repair were initiated by defendant, defendant's representatives were vice presidents in charge of purchasing, and duties of defendant's representatives included resolving matters in relation to the company negotiated with).

 As an attorney and negotiator for the Estate, Hurley had apparent authority to communicate the position of the Estate in terms of offer and acceptance. Further, prior to the negotiations over the extension of the option deadline, the Estate always had communicated its wishes to Diversified Development through Hurley, and, prior to the May 1 letter faxed directly to Baehr, the Estate never had communicated directly with Diversified Development. Finally, the Estate did not reject Diversified Development's proposed financing modifications or respond to Diversified Development's extension request, other than through Hurley, prior to the expiration of the option. Thus because of Hurley's position, and because of the Estate's behavior toward Diversified Development in relation to the option deadline, we conclude that there was an issue of fact whether Hurley had apparent authority to speak.

 Even if the evidence discloses that Hurley's representations that the Estate would not hold Diversified Development to the option deadline were not correct, his misrepresentations could still be binding on the Estate. Seavey, *Handbook of the Law of Agency* § 60, at 109; *cf. Wallo v. Rosenberg,* 331 S.W.2d 8, 13–14 (Mo.Ct.App.1960) (holding that agent's fraudulent representations about the occupancy rates and expenses of a hotel were binding on the principal in an action to rescind a real estate contract). The question is whether Hurley's statements reasonably could be understood as representations of the Estate's position. When a speaking agent makes a statement that is susceptible to more than one reasonable interpretation, the principal cannot complain that a third party relied on one reasonable interpretation over another. Thus, if the Estate placed Hurley in a position from which Diversified Development could reasonably conclude that he had authority to communicate the Estate's position on the proposed extension request, the Estate cannot complain to the third party that its agent acted contrary to its wishes.

 *Reasonableness of interpretation is a question of fact.* We have discussed the binding nature of a representation by an agent with speaking authority. We hasten to distinguish that issue from the issue whether Diversified Development reasonably interpreted Hurley's statements as representations of the Estate's extension of a grace period for exercise of this purchase option. From statements such as "a few days one way or another would not make any difference" and "[t]hese ladies are not going to hold you to the line" there is raised a genuine issue of material fact whether Diversified Development did reasonably rely on Hurley's statements as a representation of the Estate's position.

 *Statute of frauds not a bar.* As a contract for the sale of land, the contract between Diversified Development and the Estate is governed by the statute of frauds and must be in writing. *See Robinson v. Black,* 73 N.M. 116, 118–19, 385 P.2d 971, 973

(1963). The Estate argues that because the contract falls within the statute of frauds, the oral modification of the option agreement, to be enforceable, had to be in writing. We disagree and conclude that Hurley could bind the Estate to an extension of the option deadline by orally conveying the Estate's agreement to an extension.

Relying on this Court's prior decisions in *Dave Zerwas Co. v. James Hamilton Construction Co.*, 117 N.M. 724, 876 P.2d 653 (1994), and *Yrisarri v. Wallis*, 76 N.M. 776, 418 P.2d 852 (1966), the Estate argues that an oral modification of the option deadline is unenforceable because of the statute of frauds. In *Yrisarri* this Court held that parole evidence was not admissible to "contradict, vary, modify, or add to a written agreement." 76 N.M. at 779, 418 P.2d at 854 (quoting *Maine v. Garvin*, 76 N.M. 546, 550–51, 417 P.2d 40, 43 (1966)). In *Zerwas* we stated that "a modification to an agreement within the Statute of Frauds must be in writing ... because it is, in essence, a new agreement." 117 N.M. at 726, 876 P.2d at 655.

While we believe *Yrisarri* and *Zerwas* correctly stated the general law, we must reconcile those cases with other New Mexico law. In *Kingston v. Walters*, 16 N.M. 59, 64, 113 P. 594, 595 (1911), we held that "a subsequent verbal modification of the time of performance fixed by a written agreement for the sale of real estate will be regarded ... as valid." This holding recognized that parties to a written contract controlled by the statute of frauds *may* orally modify the contract and the modification will be enforced if one of the parties materially changes its position in reasonable reliance on the subsequent oral agreement. *Id.* at 64–65, 113 P. at 595; *see* Restatement (Second) of Contracts § 150 (1979) (stating that statute of frauds does not bar enforcement of subsequent oral modification if enforcement of original terms would be unjust in view of one party's material change in position). We believe these holdings may be reconciled insofar as the extension of the option agreement in *Kingston* did not so alter the real estate sale agreement as to create, in effect, a new agreement. As in *Kingston*, the oral modification between Di-

versified Development and the Estate, if authorized, would be enforceable notwithstanding the statute of frauds.

■ *The court erred in dismissing Diversified Development's prima facie tort claim against the Estate.* In recognizing prima facie tort as a cause of action in *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990), we stated that the cause of action was intended to provide "a remedy for plaintiffs who have been harmed by a defendant's intentional and malicious acts" and who have no other legal remedy. For liability under this cause of action to attach, a defendant's conduct must be both wrongful and unjustifiable. *Id.* at 394–95, 785 P.2d at 734–35. Because the court entered judgment before ruling on the motion to compel, the evidence of intent was not fully developed. The withheld portions of Heil's telephone diary may have established the Estate's knowledge and intent; therefore dismissal of the cause of action before ruling on the motion to compel was premature. There being no genuine issue of material fact in this regard on the part of Hurley, however, summary judgment was properly granted in his favor on this issue.

*Conclusion.* We reverse the judgments in favor of the Estate except the judgment based on Hurley's lack of apparent authority to grant an extension. We affirm the judgments in favor of Hurley. The case is remanded to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

BACA, C.J., and FROST, J., concur.